DANIEL DOYLE *v.* CHARLES F. MELENDY.

Special Term at Brattleboro, November, 1909.

Present:  ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed March 28, 1910.

*Master and Servant—Injuries to Servant—Admissibility of Evi-*
*    dence—Expert Testimony—Objections—Sufficiency—Liabil-*
*    ity of Master—Fellow Servants—Negligence of Superin-*
*    tendent—Question for Jury—Instructions—Refusal of Re-*
*    quests.*

Though the general rule is that an objection to the admission of
    evidence must indicate the precise point on which the court is
    asked to rule, yet where the evidence offered is such that it could
    not be admissible in any state of the case, and its inadmissibility
    is apparent on the face of the question or offer, an objection to
    it as immaterial or irrelevant is sufficiently specific.

Where an expert witness was asked whether it would be safe and
    prudent to set inexperienced men to unloading a boiler from a
    truck without certain fastenings to the rear axle, or instructions
    in regard to doing the work, an objection to the evidence as im-
    material and irrelevant was sufficiently specific, as the evidence
    was inadmissible on the face of the question itself, the subject-
    matter not being one of peculiar skill and knowledge, and so not
    within the scope of proper expert testimony.

In an action for injuries to a servant, tried in part upon a count alleg-
    ing that the accident was caused by defendant's failure to furnish
    proper tools, appliances, and materials, the holding of the court,
    on the whole evidence, that any deficiency there might have been
    in this respect was not the proximate cause of the injury, did not
    make erroneous the previous admission of evidence as to what
    tools and appliances were needed in the work.

In an action for injuries to a servant, where the question of his free-
    dom from contributory negligence involves the consideration of the
    probable effect of a great number of conditions, that question is
    for the jury.

In an action for injuries to a servant, where the undisputed evidence
was that a superintendent had entire charge of defendant's business
at the place of injury, as this would authorize the superintendent
to designate another servant to oversee the work in which plaintiff
was injured, with as much authority as plaintiff claimed for the
servant so designated, it was not error to refuse to charge that
the jury must find that the superintendent had authority˜ to
designate a servant to oversee the work before they could find that
the servant so designated had authority to act as foreman.

The selection of a foreman by the master's superintendent in charge
of his business has the same effect as if made by the master, the
superintendent's neglect being the master's neglect.

In an action by a servant for injuries caused by the slipping of a
boiler which he was assisting in unloading from a truck by pulling
a king-pin connecting the boiler to the front axle of the truck
without blocking the boiler up, a requested charge that if plain-
tiff had in mind that blocking was necessary before pulling the
pin, and looked for blocking and failed to find it, and then pulled
the pin without the blocking, he was negligent, if he knew and
comprehended, or ought to have known and comprehended, the
danger of proceeding without the blocking, was properly refused
because based on the assumption that it was necessarily dangerous
to attempt the unloading without blocking, as it was a question
for the jury whether the situation was such that a prudent man
might have undertaken the work without the blocking.

Though the court might properly have granted the requested charge
that, if the jury found that plaintiff had testified falsely about
his injury or physical condition, they might consider it in passing
on the truth of his other testimony, it was not error to refuse
it.

One may act as foreman and still be the "fellow servant" of the men
· whom he directs, and it is necessary to look beyond the designation
of the person to determine the exact relation and the resulting
liability of the master.

In an action by a servant for injuries caused by the slipping of a
boiler which, by the direction of a foreman, the servant was assist-
ing in unloading by pulling a king-pin connecting the boiler to
the front axle of the truck, a charge that if the master's business
required special skill and knowledge to conduct it safely, it was
the master's absolute duty to provide a foreman qualified to instruct

the servants in their work, and that the master would be answerable for the competency of a person performing that service, whether foreman or not, and that if a person was intrusted with such work and was competent to perform it, and the accident occurred merely through his negligence, or the negligence of the other servants, it was caused by a fellow servant, and plaintiff could not recover, and that the person so intrusted with the work was a fellow servant of plaintiff, and that, if he was competent to perform the service, plaintiff could not recover, but if he was incompetent, and the master knew or might have known of it by reasonable prudence, and the injury was caused by such incompetency, the master would be liable, without anything in the charge specifically applying its doctrine to the foreman's order to plaintiff to remove the king-pin, or to any other feature of the foreman's conduct, was erroneous, as in one connection making the master absolutely answerable for the competency of the foreman, and in another connection relieving the master from liability, unless he knew or ought to have known that such foreman was incompetent, thereby permitting the jury to return a verdict on one of the two grounds allowed in the charge without finding all the facts essential to a recovery on that ground.

CASE for negligence. Plea, the general issue. Trial by jury at the April Term, 1909, Windham County, *Butler*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Clarke C. Fitts* and *Hermon E. Eddy* for the defendant.

It was error to allow the witness Tuttle to answer the hypothetical question, as the subject-matter thereof was not within the scope of expert testimony. *Hill* v. *Railroad Co.* 55 Me. 438; *Oakes* v. *Weston*, 45 Vt. 430; *Fraser* v. *Tupper*, 29 Vt. 409; *Clifford* v. *Richardson*, 18 Vt. 620; *Armstrong* v. *Railway Co.* 45 Minn. 85, 47 N. W. 459; *Ferguson* v. *Hubbell*, 97 N. Y. 507.

The defendant was not present superintending these details, and, it not being shown that he failed to perform his duty in furnishing a suitable superintendent and sufficient equipment, he is not liable. *Zeigler* v. *Day*, 123 Mass. 152; *Summersell* v.

*Fish,* 117 Mass. 312; *Johnson* v. *Boston,* 118 Mass. 114; *Harkins* v. *Standard Sugar Refinery,* 122 Mass. 400.

*Gibson & Waterman* and *Chase & Daley* for the plaintiff.

MUNSON, J. The defendant, a resident of Nashua, N. H., operated a portable saw-mill on a lumber job in Athens, employing about twenty men. He had as superintendent one Trumbull, who hired the men and had charge of all the work. The plaintiff was the engineer, and one Fellows was the sawyer. The plaintiff was injured while assisting in unloading the boiler, in connection with the removal of the plant to a new location. Trumbull was not present, and plaintiff's evidence tended to show that Fellows acted as foreman and boss.

The case was tried on an amended declaration containing five counts. We give the substance of the allegations. The first count alleges that Trumbull employed Fellows as superintendent or foreman to move and set the boiler, and that the defendant or his superintendent aforesaid directed the plaintiff to assist in the work; and that the truck furnished for the work was unsafe and the boiler insecurely fastened thereon, all of which was unknown to the plaintiff; and that plaintiff's injury was caused solely by these insufficiencies. The second count alleges that it became necessary for the defendant to employ a superintendent or foreman to move the boiler and have charge and direction of the moving, and to employ laborers to do the manual work; and that the plaintiff was employed for said work as a laborer, when he had no experience or knowledge regarding it, as the defendant well knew; and that it was the defendant's duty to employ as such superintendent or foreman a careful and competent person, experienced in moving boilers, who could direct the laborers as to the proper method of doing the work, but that the defendant disregarded his duty in that behalf and put the work in charge of one Fellows, who was a careless, incompetent and inexperienced person, as the defendant knew or ought to have known; and that while the plaintiff was engaged in this work as a laborer, and while said Fellows was superintendent or foreman thereof, said Fellows directed the plaintiff to do the particular thing which resulted in his injury, which thing was improper and dangerous. The third count is

incomplete, but is like the second as far as drawn. The fourth count alleges the necessity and duty of employing a competent superintendent or foreman for this work, as in the second count, and alleges further that it took two days to move the boiler and place it in position in its new location, and that defendant employed Trumbull as superintendent or foreman, and also Fellows as such foreman or superintendent, to take charge of the loading, fastening and transporting of the boiler, and that Trumbull acted as superintendent the first day, and took charge of the loading and fastening of the boiler, and the moving of it as far as it was moved that day, and that Fellows acted as superintendent the second day, and took charge of moving the boiler and placing it in position, and that Trumbull did not fasten the boiler properly on loading it, and that Fellows did not fasten it properly the second day, and that in consequence of such insecure fastening it became loosened; following with averments substantially like the closing averments of the second count. The fifth or amended count alleges the failure of the defendant to furnish proper tools, appliances and material, and avers that by reason of this failure and because of the insecure fastening, the plaintiff, while working under the direction of the defendant through his superintendent or foreman, received the injury complained of. The claim presented by this count was not submitted to the jury.

We state the case as shown by the plaintiff's evidence. The boiler weighed about four tons, and was moved on trucks kept for that purpose. It was jacked up and loaded under the supervision of Trumbull and with his help. The plaintiff was then engaged in other work, and noticed nothing about the loading, and had nothing to do with the drawing. While the load was on its way, Trumbull told the plaintiff to take two men and dig a place for the boiler, and fix it so that the boiler could be drawn into it. Plaintiff did as directed, and dug a pit with slants into it at each end, using his own judgment regarding the details. The bottom of the pit was about five feet wide, eight feet or more long, and two feet below the surface. The boiler was drawn into the pit towards night, and nothing more was done with it that day. The next morning Trumbull said he was going to be away, and told Fellows to take the men and set the boiler on its foundation. Fellows and the plaintiff went up to

the pit, and prepared to unload the boiler, Fellows taking charge of the work. Plaintiff had had no experience in work of this kind. The stack end of the boiler was at the front. About a foot in from this end was a collar of iron, attached to or a part of the boiler, which rested on the front axle of the trucks. The fire box end of the boiler rested on the rear axle, with the fire box inside the axle and hanging below it. There was a draw iron fastened to the underside of the boiler by two lugs at a point five or six feet back from the front end, and this iron extended forward between the iron collar above described and the front axle. The front end of the boiler was fastened to the front axle by a king-pin which went through the iron collar, and through this draw iron, and into the axle. There was no other connection or fastening between the front axle and the boiler or the rear axle, but the rear end of the boiler was fastened to the rear axle in two or three ways. Fellows said they would have to block the boiler up, and told plaintiff to go in and take out the king-pin, directing the other men to hold up the pole to ease the pin. It was found impossible to stir the pin, and Fellows put a pry in between the collar and the head of the pin, and lifted the pin so that the plaintiff could get hold of it. The plaintiff went in between the boiler and the front wheel, on the right side of the boiler and behind the front axle, and put in his left hand to take the pin out, and as he lifted the pin the boiler slipped forward, hitting the plaintiff on the shoulder and pinning him between the boiler and the wheel. The plaintiff was right handed, and could have gone in on the other side of the boiler just as well, but went in as he did because he happened to be on that side. Plaintiff intended to leave the bottom of the pit level, and considered it level. The hind wheels were down deep in the soft earth and did not need any blocking. He could not get at the pin in this way from the front because the front end of the boiler extended so far beyond the axle, but he did not look to see whether he could have got at it from the front by reaching under the boiler.

The defendant claimed, and his evidence tended to show that the plaintiff was directed to take charge of this work and did so.

One Tuttle, produced by the plaintiff, testified as an expert, and was permitted to answer a hypothetical question which

defendant objected to as immaterial and irrelevant and because the evidence of the witness could not give the jury any light on the subject. The defendant now claims that the matter inquired about was not a proper subject of expert evidence. Plaintiff treats the objection as going only to the materiality and relevancy of the evidence, and therefore not sufficiently specific to save the question argued. But if the language be construed to indicate nothing more than immateriality and irrelevancy, the generality of the objection will not necessarily prevent the consideration of the question. The general rule is that an objection must be so framed as to indicate the precise point upon which the court is asked to rule. But when the evidence offered is such that it could not be material or relevant in any state of the case, and its inadmissibility is apparent on the face of the question or offer, an objection to it as immaterial or irrelevant will be sufficiently specific. *Sparf* v. *United States*, 156 U. S. 51, 39 L. Ed. 343, 15 Sup. Ct. 273.

The question objected to recited in detail the manner in which the boiler was placed upon and fastened to the trucks, the grade of the road over which it was drawn, the character of the fastenings and the effect of the trip in loosening them, and the nature of the place in which the trucks were left for unloading,—and concluded as follows: ''Assuming all these things, is it, in your judgment, safe and prudent to set inexperienced men to unloading that boiler from the truck without additional fastening to the rear axle, or instructions in regard to the way to do the same?'' The evidence called for was not within the limit of proper expert testimony, as marked out in *Bemis* v. *Central Vermont R. R. Co.*, 58 Vt. 636, 3 Atl. 531. The matter to be passed upon was not one of peculiar skill and knowledge, but merely of the skill and knowledge that are acquired by ordinary people in many everyday employments. It involved nothing more than an application of the commonest principles to the handling of an article of more than ordinary weight. The evidence was inadmissible because of the nature of its subject-matter, and could not be made admissible by any change in the presentation of the case. Its lack of proper applicability to the issue was apparent from the question itself. So the objection that it was immaterial and irrelevant was sufficient.

This witness was also permitted to state what tools and appliances were needed in unloading the boiler, and defendant claims that this testimony was not admissible under the view of the case which the court took in its charge, and was prejudicial. But the case was being tried on the fifth count in part, and the court's conclusion upon the whole evidence that any deficiency there might have been in this respect was not the proximate cause of the injury, did not make the admission of this evidence error.

The defendant moved that a verdict be directed in his favor, assigning several grounds, of which the only one argued is that there was no evidence tending to show that the plaintiff was free from contributory negligence. The defendant argues from the plaintiff's own testimony that he did not adopt the safest method in removing the pin, and that the difficulties encountered in removing it ought to have led him to anticipate and guard against just such a movement of the boiler as occurred. But the matter presented for the plaintiff's decision involved a consideration of the probable effect of a great number of conditions, and in such a case it is for the jury to say whether the conduct of the plaintiff was consistent with prudence.

The defendant requested an instruction that the only question for the jury was whether Fellows was in control of this work by defendant's authority, and whether the accident was caused by his negligent acts. If there was a non-compliance here, it was in the failure of the court to restrict the inquiry to the matters stated, and the soundness of the request in this respect will be determined by a later examination.

The defendant requested a further instruction that the jury must find that Trumbull had authority to appoint a superintendent or foreman for this work, before they could find that Fellows, if so appointed, had authority to act as such superintendent or foreman. The undisputed evidence was that Trumbull had entire charge of the defendant's business at this plant, and this would authorize the designation of an employee to take charge of a work of this character with as much authority as the plaintiff claimed for Fellows.

Another request was in substance that inasmuch as there was no evidence that the defendant had anything to do with hiring Fellows, and no question made but that Trumbull was a

competent superintendent, the defendant was not liable for any act or omission of Fellows in what he did, because if the superintendent was competent his act or neglect in putting Fellows in charge would not make the defendant liable. But Trumbull's relation to the business was such that his selection of Fellows was the same as if made by the defendant himself, and whatever neglect there may have been on the part of Trumbull was the neglect of the defendant. The defendant could not relieve himself from the obligations of an employer by placing his business in the hands of a competent superintendent.

Defendant requested an instruction that if the plaintiff had in mind that blocking was necessary before pulling the pin, and looked for blocking and failed to find it, and then pulled the pin without blocking, it was negligence, if he knew and comprehended, or ought to have known and comprehended the danger of proceeding without the blocking. The request is based upon an assumption that it was necessarily dangerous to attempt the unloading without blocking. The plaintiff was entitled to have the jury say whether the situation was such that a prudent man might have undertaken the work without a blocking.

The court was also requested to instruct the jury that if they found that the plaintiff had testified falsely about his injury or physical condition, they might consider it upon the question of the truth of his other testimony. The court might properly have given this instruction, but it was not error to refuse it.

The defendant claimed further in his requests that the question of Fellows' competency as a fellow servant was not material under the pleadings and evidence; and excepted to certain parts of the charge relating to the fellow servant doctrine; and now insists that there was nothing in the declaration that required him to produce any evidence or argue any question as to the competency of fellow servants.

In its charge the court first referred generally to the defendant's duty to furnish the plaintiff a safe place, suitable appliances and competent fellow servants, and to use the care of a prudent man in doing this. Before taking up the subject in detail, the court told the jury that the main questions for their determination were, whether Fellows or the plaintiff was the one selected to have charge of this work; if Fellows, whether he was competent to perform the duty in a safe and prudent manner;

and if he was incompetent, whether that was the cause of the accident. In presenting these questions the court said it was the defendant's duty to appoint a competent man for this service— a competent fellow servant to the plaintiff. The jury were further instructed that if they found that the character of the business was such as to require special skill, experience and knowledge to conduct it safely, it was an absolute duty of the defendant to provide a superintendent or foreman so qualified, to instruct and direct the servants in their work, and that he would be answerable for the competency of the person performing that service, whether foreman or not. In applying this instruction the court said, in substance, that if Fellows was intrusted with this work and was competent to perform it, and the accident occurred merely through his negligence or the negligence of the other servants, it occurred through the negligence of a fellow servant, and the plaintiff could not recover; but that if Fellows was intrusted with the work and was not competent to perform it, and the injury was caused by his incompetency, or in part by his incompetency and in part by the negligence of the other workmen, and without the fault of the plaintiff, the plaintiff could recover. The court said further that the duty of looking after the details of the work may be delegated to competent servants, and that if the servants provided are possessed of sufficient skill to have charge of the work, and a fellow servant is injured through their negligence, he cannot recover; but that if the master delegates the duty to an incompetent servant and injury results, he will be liable. The jury were also told that Fellows was a fellow servant of the plaintiff in doing this work, and that if he was competent to perform the service the defendant had done his duty in that regard; but that if he was incompetent, and the defendant knew it, or in the exercise of the prudence of a prudent man ought to have known it, and the injury was caused by his incompetency, the defendant would be liable. There is nothing in the charge specifically applying its doctrines to Fellows' direction regarding the king-pin, or to any other feature of his conduct.

The declaration apparently goes upon the theory that the moving of the boiler was a complicated and dangerous occupation. It is clear that the negligence charged throughout the declaration is the defendant's failure to provide a competent

superintendent or foreman to take charge of the work and direct the workmen. But one may act as foreman and still be the fellow servant of the men whom he directs, and it is necessary to look beyond the description of the person to determine the ground of liability. It is alleged in substance that the plaintiff was without knowledge or experience regarding the moving of boilers, and in need of a suitable person to care for and direct him; but this allegation was treated as immaterial, for it was not left to the jury to say whether plaintiff's claim in this respect was true. It is alleged that it was the defendant's duty to provide a competent foreman for this work, and that he provided one who was incompetent, which fact he knew or ought to have known. This allegation of knowledge was unnecessary if the responsibility for any failure of Fellows was to rest on the ground that the duty to be performed by him was an absolute duty of the defendant, like the duty of providing necessary supervision for a complicated and dangerous service, or the duty of instructing a minor or an ignorant adult—some duty in which the employee would be the representative of the master although a fellow servant of the plaintiff. But such an allegation was necessary if the case was to stand on some shortage of Fellows in a matter wherein he was merely a fellow servant although the foreman, for in such a case the defendant would not be liable for a default of Fellows unless he was negligent in employing him.

It will be seen from our statement of the charge that in one connection the defendant was made absolutely answerable for the competency of Fellows whether foreman or not, while in another connection he was relieved from liability unless he knew or ought to have known that Fellows was incompetent; and we think the charge as a whole was such that the jury may have returned the verdict on one of two grounds without finding all the facts essential to a recovery on that ground.

*Judgment reversed and cause remanded.*