HIRAM G. MOORE *v.* E. V. DUKE ET AL.

February Term, 1911.

Present: MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed May 8, 1911.

*Trespass—"Breaking" Close—Force—Extent—Officers—Protection*

*by Process—Necessity of Return—License—Damages—Plead-*

*ing—Nominal Damages—Exemplary Damages—Right to Re-*

*cover—"Malice"—Joint Defendants—Duty to Charge—Ex-*

*ceptions to Charge—Waiver.*

In trespass *quare clausum* against an officer serving a writ of replevin, evidence considered, and *held* that it tended to show that defendant entered under the license in law afforded by the writ, and not under a license in fact.

Defendant completely broke and entered plaintiff's close, so as to be liable in trespass, when defendant unlawfully stepped across the imaginary line that divided plaintiff's lot from the street.

The wrongful entry of another's close without force will support an action of trespass *quare clausum.*

Where a constable, without force and solely to serve a writ of replevin fair on its face, entered plaintiff's close and duly served the writ, but, instead of filing it in the court to which it was returnable, sent it, with his return thereon indorsed, to the attorney of the plaintiffs therein, who never entered it in court, and the constable duly delivered the property replevied to the plaintiff in replevin, the constable's failure duly to return the writ vitiated all his previous acts, and made him a trespasser from the beginning.

Where a constable, without force and solely to serve a writ of replevin fair on its face, entered plaintiff's close and served the writ, which was never returned into court, he cannot justify the entry on the ground of the license in law afforded by the writ or on an express license in fact.

In trespass *quare clausum* by a village clerk for wrongfully entering his close and serving a writ of replevin by which one of his record books was taken and delivered to the plaintiffs in replevin, evidence that during the time the book was out of the clerk's possession people came to examine it was admissible without being specially pleaded, since his embarrassment incident to the situation was the natural consequence of defendant's act.

26

The trial court is entitled to know the precise point of an objection to the admission of evidence.

Nominal damages and small damages are not the same, for where a legal right has been invaded and real damage done, such damages, though small, are actual. "Nominal damages" are those so small in amount as to show that they are not intended as any equivalent or satisfaction to the party recovering them.

In trespass *quare clausum*, where there was evidence that plaintiff's damage, though small, was actual, and the jury allowed him damages in the sum of $1., and exemplary damages in the sum of $19.33, the exemplary damages are not objectionable on the theory that the compensatory damages were only nominal.

Exemplary damages are allowed in enhancement merely of ordinary damages, and the propriety of their allowance depends wholly on defendant's malice or wantonness, "malice" in that relation meaning not general malice, nor malice shown in other matters or at other times, but malice in the very matter for which defendant is found liable.

In a tort action against several defendants the compensatory damages are indivisible, and so no exemplary damages can be allowed if any defendant acted in good faith.

To warrant the allowance of exemplary damages against an officer it should clearly appear that he acted with malice, or in an oppressive, arbitrary, or insulting manner, and where an officer in the service of a writ of replevin did not act improperly, though, because of his failure to return the writ into court, it afforded him no protection against an action of trespass, the malice of the plaintiff in replevin is not imputable to the officer so as to charge him with exemplary damages.

In trespass *quare clausum* against an officer serving a writ of replevin and others, where there was no evidence authorizing the award of exemplary damages against the officer, it was the court's duty, without any request, to charge that exemplary damages could not be assessed against any of the defendants, and they did not waive their right to that instruction by declining the court's suggestion to have the jury return separate verdicts on the question of malice, but they preserved their rights by an exception to the instruction that exemplary damages might be allowed if the jury found that defendants acted with malice.

TRESPASS *quare clausum.* Plea, the general issue with notice of license. Trial by jury at the September Term, 1910, Washington County, *Hall,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*John W. Gordon* and *W. N. Theriault* for the defendants.

The abuse of a license in fact will not make an officer a trespasser *ab initio*. *Stone* v. *Knapp*, 29 Vt. 501; Six Carpenters' Case, 8 Coke 146. Even if the license to go to the village clerk's office is treated as a license in law, what the defendant did could not make him a trespasser, because in such a case he cannot become a trespasser *ab initio* unless he does some positive wrongful act, giving character to the original act and incompatible with the legal right to do the first act, and showing that it was entered upon for an unlawful purpose. *Stoughton* v. *Mott*, 25 Vt. 668; *Hyde* v. *Cooper*, 26 Vt. 557; *Perkins et al.* v. *Gibbs*, 29 Vt. 346; *Watson & Barnard* v. *Joslin*, 29 Vt. 454; *Barrows* v. *Fassitt*, 36 Vt. 631; *Buzzell* v. *Johnson*, 54 Vt. 91; *French* v. *Holt*, 57 Vt. 190. The compensatory damages awarded were only nominal, and so there is no basis for any exemplary damages. *Stacy* v. *Portland Publishing Co.*, 63 Me. 287; *Meidel* v. *Anthis*, 71 Ill. 241; *Merrils* v. *Tariff Mfg. Co.*, 10 Conn. 384, 27 Am. Dec. 682; *Hoadley* v. *Watson*, 45 Vt. 289; *Earl et al.* v. *Tupper*, 45 Vt. 275.

*Fred L. Laird* and *H. C. Shurtleff* for the plaintiff.

POWERS, J. The declaration in this action of trespass to the freehold contains two counts: one charges a trespass to the plaintiff's dwelling-house; the other, a trespass to the lot on which the dwelling stood. The defendants severed in their pleas—each filing the general issue with notice of a license in fact.

The plaintiff was clerk of the incorporated village of Plainfield, and as such had the custody of its books of record, including one which contained, among other things, the record of building permits granted by the village. These records were kept by the plaintiff at his dwelling in a certain room which he used for an office. The defendant Duke was constable of the town of Plainfield. The other defendants, Ryan and Bruffee, were respectively bailiff and trustee of the village. Ryan was also street commissioner. Some controversy having arisen over the building operations of one Fortney, and it being claimed by the officials that he had violated the terms of his permit, it became necessary for Ryan and Bruffee to have the record

404 MOORE v. DUKE ET AL. [84

of this permit or a copy of the same. On the morning of March 8, 1910, Bruffee called at the clerk's office and asked the clerk to loan him the book containing this record. This the clerk refused to do. A little later, Bruffee and Ryan called at the office, and asked for and examined the book, but the clerk declined to allow them to take it away from the office. Thereupon, after some spirited discussion regarding the matter, Ryan went to Montpelier and arranged with an attorney to have the book replevied. Before leaving Plainfield he notified the constable of his intentions, and asked him to be ready to serve the writ, which was to be sent him by mail. The writ came in due time, a bond was executed and taken, and the constable went to the plaintiff's house to serve the writ. He did serve the writ, took the book thereunder, and delivered it to the plaintiffs therein—Ryan and Bruffee. He indorsed his return on the back of the writ, and sent it by mail to the attorney who made it —but it was never entered in court.

The evidence relative to some of the foregoing matters was somewhat conflicting, especially as to what took place at the plaintiff's house when Ryan and Bruffee were there in the morning, and when Duke was there with the writ. But there was evidence tending to establish the facts as above recited. Indeed, as to what took place when Duke was there, he himself is the plaintiff's best witness. For he testified positively that he went there that day to take the book on the writ, and for no other purpose. To be sure, later on when examined by his counsel, he modified this statement somewhat, but afterwards he testified, in answer to specific questions by the court, that his purpose in going there was to serve the writ—to get the book by the writ. This testimony being in the case, it cannot be said that the license in fact on which the defendants relied was so clearly made out as to require the court to order a verdict for the defendants. If this evidence did not, of itself, disprove that defence and establish the fact that the officer entered under the license in law which his writ afforded him, it at least made a jury question of it, and the defendants' motions were properly overruled. Some force is claimed for certain evidence that when the officer rapped at the door, the plaintiff's wife opened it and invited him to enter; and this is said to have

amounted to a license in fact. But the breaking of the close described in the second count preceded this; it was complete when the officer stepped across the imaginary line which divided the lot from the street. Besides, Mrs. Moore says in effect that she did not invite him into the house until he said he had come to serve a replevin writ. Nor is there any merit in the defendants' argument that no force was used in making the entry, and that therefore, it was no trespass. The force necessary to an action of trespass to the freehold may be actual or constructive; whenever the entry is wrongful, it will support an action, though no actual force be used. If the entry is not for a justifiable purpose, an action lies, though it be inadvertent and unintentional, and though the *locus* be uninclosed or the door of the house be open. These propositions are elementary.

Duke's entry, when made, was for a justifiable purpose, for his process was fair and his entry without actual force; nor did anything occur while he was upon the premises to change his situation; he proceeded according to the commands of his process in all respects but one; the one thing which remained for him to do—and which was absolutely essential to make all his previous acts regular and valid—he omitted. His failure to enter the writ in the court to which it was returnable—to make the statement in common form—vitiated all his previous acts, rendered the purpose of his entry unjustifiable, and made him a trespasser from the beginning. *Ellis* v. *Cleveland*, 54 Vt. 437; *Wright* v. *Marvin*, 59 Vt. 437, 9 Atl. 601; *Wright* v. *Templeton*, 80 Vt. 358, 67 Atl. 817, 130 Am. St. Rep. 990. We do not overlook the fact that these defendants do not justify under the process. The license which they plead is a license in fact. But the result is the same. As evidence that Duke did not come upon the premises under a license from the plaintiff, either express or implied, it was permissible to show that he came there for the sole purpose of serving this writ. So far as the defence set up in the notices was concerned, this may have been all that was required; but the concession that the writ was never returned left Duke without any justifiable reason for entering the place, either in law or in fact. That this dwelling was used in part for a village clerk's office did not enlarge Duke's rights. A public office

like this is not public for all purposes or to all persons; it is only open to such as have legitimate business there; and this includes only such persons as have business to transact there of the kind for which the office is maintained, and other matters reasonably incident thereto, and in some circumstances persons whose purpose is merely social. Such persons have at least an implied license to enter. But Duke did not have that kind of an errand there; at least the plaintiff's evidence tended to show that he did not; for the service of process is not included in the implied license. Nor does the fact that the place was a dwelling add anything to his rights. For again, while one who makes a neighborly call at the dwelling of another, though not specially invited, is not, generally speaking, a trespasser but a licensee, Duke cannot avail himself of this, for he went there, not to make such a call, but to serve a writ. In any view of it, the legality of his entry depended upon full and complete obedience to the mandate of his process, and having failed in the essential particular named, he was a trespasser *ab initio*.

Subject to the defendant's exception, the plaintiff was allowed to testify that during the time the record-book was in the hands of the defendants, various persons came to the office to examine it. In this there was no error. The embarrassment to the plaintiff incident to this situation would be a natural consequence of the defendants' acts and must be held to have been reasonably within the contemplation of the parties. It was, therefore, a proper element of damages. And such embarrassment being a form of mental distress, it could be recovered for without a special allegation to cover it. *Goodell* v. *Tower*, 77 Vt. 61, 58 Atl. 790, 107 Am. St. Rep. 745.

The plaintiff was also allowed to testify, subject to exception, that he asked the officer what the consequences would be if he refused to give up the book; and that Duke replied that it would be a contempt of court, and would probably cost him two hundred dollars; and that as a result of this statement, an attack of heart trouble was brought on, which disabled him for several days. From the record, to which we are referred on this exception, it appears that the objection to this evidence was general,—no ground being stated. In fact, all that counsel

said was: "We object,—say that is not admissible;" and again: "We want this all under exception, of course." After this evidence was all in, counsel informed the court that there was "nothing in the writ about these things." Whereupon, having apparently taken time to examine the declaration, the court sustained the defendants' point that there being no allegation covering this matter of damage, the evidence could not properly be received, ordered it stricken .out, and instructed the jury to disregard it. This incident shows in a striking manner how salutary is the rule which requires an objector to state the grounds of his objection. It is quite impossible in the midst of a trial for the court to see at a glance all the different grounds upon which an objection may be based. The court is entitled to know just the point of the objection, not only for his own protection, but that retrials may not unnecessarily be required. As said by Mr. Justice Harlan in *District* v. *Woodbury*, 136 U. S. 450, 34 L. Ed. 472, 10 Sup. Ct. 990, after referring to the fact that general objections are well calculated to embarrass the court and put it at a disadvantage in its conduct of the trial, "It [the court] was entitled to know the grounds of the objection, so that the jury could be put in possession of the real case to be tried." In the case before us, as soon as the point of the objection was made clear, it was sustained, and the court did all in its power to rectify the inadvertent error. The exception cannot be sustained. *Doyle* v. *Melendy*, 83 Vt. 339, 75 Atl. 881, *Herrick* v. *Holland*, 83 Vt. 502, 77 Atl. 6.

The plaintiff claimed and was allowed to recover exemplary damages, which, as appears from the 'special verdict, were assessed at the sum of $19.33. This allowance the defendants say was improper for that the damages found were nominal merely, and that nominal damages afford no predicate for exemplary damages. But nominal damages and small damages are not the same thing. Where a legal right has been invaded and real injury done, the damages, though small, are actual rather than nominal. *Michael* v. *Curtis*, (Conn.) 22 Atl. 949. It appears from the record that the damages here awarded were fixed at one dollar. Nominal damages are those so small in amount as to show that they are not intended as any equivalent or satisfaction to the party recovering them. R. & L.

Law Dic. "Damages" §3. It is sometimes said that "nominal damages" means "no damages"; that they exist only in name, and not in amount. *Brennan* v. *Berlin Iron Bridge Co.,* (Conn.) 44 Atl. 727; *Stanton* v. *N. Y. & E. Ry. Co.,* (Conn.) 22 Atl. 300, 21 Am. St. Rep. 110. The term "nominal damages" like the term "exemplary damages" is a relative term, and carries no suggestion of certainty as to amount. *Sellers* v. *Manor,* 113 Ga. 643, 39 S. E. 11; *W. U. Tel. Co.* v. *Glenn,* (Ga.) 68 S. E. 881. In view of the character of the case, we cannot say that the sum here allowed by the jury was not intended to cover the damages actually sustained by the plaintiff, and this ground of objection to the allowance of exemplary damages fails.

With us, exemplary damages are allowed in enhancement merely of ordinary damages. *Hoadley* v. *Watson,* 45 Vt. 289, 12 Am. Rep. 197. The propriety of their allowance depends wholly upon the malice or wantonness of the defendant. And this means, not general malice,—not malice exhibited in other matters or at other times,—but malice in the very matter he is found liable for. *Earle* v. *Tupper,* 45 Vt. 275; *Krugg* v. *Pitass,* 162 N. Y. 154, 76 Am. St. Rep. 317, 56 N. E. 526. If more than one is made defendant, all must be shown to have been moved by a wanton desire to injure. *Boutwell* v. *Marr,* 71 Vt. 1, 42 Atl. 607, 43 L. R. A. 803, 76 Am. St. Rep. 746. The correct rule in a case like this is that the compensatory damages are indivisible;—all are equally liable, without regard to degrees or shades of guilt. But since exemplary damages are predicated upon the animus of the one against whom they are claimed, it may happen, when two or more are defendants, that some are liable for exemplary damages and others only for compensatory; some may be acting in good faith, while others may be acting maliciously. In such cases, while all are liable for the full amount of the actual injury which the plaintiff has suffered from the joint tort—are equally liable for compensatory damages—exemplary damages are to be assessed according to the guilt of the most innocent of the defendants. And if any of these was acting in good faith and so not liable for punitive damages, none can be awarded in the suit. *McCarthy* v. *DeArmit,* 99 Penn. St. 63; *Clark* v. *Newsam,*

1 Exch. 131. As was said by this Court in *Lombard* v. *Batchelder*, 58 Vt. 558, 5 Atl. 511: "When two persons have so conducted themselves as to be jointly liable for a tort, each is responsible for the injury committed by their common act. But when motive may be taken into consideration, the improper motive of one cannot be made the ground of aggravating the damages against the other if he is free from such motive. In such case, the plaintiff must elect against which party he will seek aggravated damages." Again, it was said in *Willett* v. *St. Albans*, 69 Vt. at p. 337, 38 Atl. 72, that exemplary damages are never suffered to fall on a party innocent of the offence for which they are the punishment. It is for this reason that punitive damages are never given against one only liable on account of his relation to the wrongdoer. *Haver* v. *Cent. R. R.*, (N. J.) 45 Atl. 593; *Graham* v. *St. C. St. Ry. Co.*, (La.) 49 Am. St. Rep. 436, 18 South 707; *I. S. & M. S. R. R.* v. *Prentice*, 147 U. S. 101, 37 L. Ed. 97, 13 Sup. Ct. 261; *Forhman* v. *Cons. Trac. Co.*, (N. J.) 43 Atl. 892; *Willett* v. *St. Albans, supra; Lombard* v. *Batchelder, supra; Wells* v. *B. & M. R. R.*, 82 Vt. 108, 71 Atl. 1103. It may be that the rule last stated may be sufficient for the disposition of this question; for it is difficult, if not impossible, to find in the record any other ground on which liability is established against the defendant Bruffee. It is also true, that there is very little, if any, evidence that he was acting maliciously in anything he did or had to do with.

But however this may be, there was no ground on which Duke could be held for exemplary damages. He was acting only as a public officer in the service of process regular on its face. His conduct was not unnecessarily oppressive, arbitrary or insulting. On the contrary, he appears to have been accommodating and sympathetic. Everything indicates that he and the plaintiff were friendly before and at the time in question, and the plaintiff's own testimony clearly shows that at the time, so far as Duke was concerned, he had no complaints to make or charges to prefer. The evidence was uncontradicted that Duke returned the writ to the attorney who made it, supposing such to be the proper course, and thereafter took no thought of the matter. His statement to the plaintiff regarding the consequences of a refusal to surrender the book cannot, in the

circumstances, be said to indicate a malicious purpose. So, conceding that Ryan was acting maliciously all the way through and assuming that Bruffee was actuated by a desire to injure the plaintiff, the fact remains that Duke was only trying, in good faith, to do his duty as an officer as he understood it. To hold an officer for vindictive damages, it should clearly appear that he acted with malice, or in an oppressive, arbitrary or insulting manner. The motives of the party who procured the writ are not to be imputed to him. He is answerable for his own acts, and them alone. The mere fact that he fails to meet all the requirements of legal procedure is not enough to authorize the imposition of exemplary damages. Cobbey, Replevin, §933, 13 Cyc. 116.

Such being the law of the case as made by the evidence, it was the duty of the court to charge accordingly, whether so requested or not. *State* v. *Clary*, 84 Vt. 114, 78 Atl. 717. The defendants did not waive any of their rights by declining the suggestion of the court regarding separate verdicts on the question of malice. The court had already charged that exemplary damages might be allowed in case the jury found that the defendants acted with malice; and to this the defendants had excepted. Nothing more was required to save their rights. There being no evidence that Duke acted with malice, no exemplary damages could be awarded in the case, and the charge on this subject,—though not otherwise—was erroneous.

The case will not have to be remanded, however, for this error only affects the amount of the recovery, and by the aid of the special verdict, we can separate from the general verdict the amount improperly included, and render judgment for the correct amount. *Chandler* v. *Spear*, 22 Vt. 388; *Miltimore* v. *Bottom*, 66 Vt. 168, 28 Atl. 872; *Ellis' Admr.* v. *Durkee*, 79 Vt. 341, 65 Atl. 872.

*Judgment reversed, with costs in this Court. Judgment for the plaintiff for one dollar damages, with interest thereon during stay of execution and his costs below.*