STATE *v.* MINNIE COMSTOCK.

May Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 18, 1912.

*Criminal Law—Review—Objections not Stated Below—Witnesses—Corroboration—Evidence—Objections.*

Objections not made below will not be considered on review.

Where the ground of an objection to the admission of evidence was not stated below, the objection is not available on review, unless it appears that the evidence could not have been admissible in any state of the case.

In a prosecution of respondent for adultery with D., where respondent testified that, when the officer arrested her in the room where she was found with D., he stated that he also had a warrant for D. for adultery with a woman other than respondent, the information against D. was not admissible in evidence to corroborate respondent's testimony, and to show that D. must have known what he was arrested for, and that it was not for an offence committed on that day, there being no evidence that the officer had seen the information, nor that the warrant named the other person with whom the offence therein alleged was committed.

A warrant for the arrest of one charged with adultery need not name the other party to the alleged offence.

In a prosecution for adultery, evidence that, at the time respondent was arrested, the other party escaped through the window of the room wherein the offence is claimed to have been committed, is admissible as part of the *res gestae.*

INFORMATION for adultery. Plea, not guilty. Trial by jury at the December Term, 1911, Windsor County, *Miles,* J., presiding. Verdict, guilty; and judgment thereon. The respondent excepted.

The information charges that respondent committed adultery with one John Duling at Windsor, Vermont, on July 14, 1910, and the State claimed conviction only for an offence com-

mitted on that day. The evidence of the State tended to show that about 10 o'clock in the forenoon of that day two officers, Thomas and Taylor, went to the "Lapine House" in that town, rapped at the front door, and were admitted by Mrs. Lapine; that they immediately went upstairs to a certain bedroom, found its door locked, rapped, and were admitted by respondent, who was bare-footed and clad only in her night robe; that on the floor in the bedroom they found a pair of man's shoes and a pair of woman's shoes, and on a chair therein a pair of trousers and other articles of a man's clothing, and on the foot of the bed a woman's clothing; that on the further side of the bed they found said John Duling, and that the bed clothes on the front side of the bed were "rumpled" as if some other person had occupied that part of the bed; that Thomas then told respondent and Duling that he had warrants for their arrest for the crime of adultery, and ordered them to dress; that just then the officers' attention was attracted by sounds from an adjoining room, and they stepped into the hall, where Taylor remained while Thomas went into the adjoining room; that immediately thereafter Thomas heard a noise from the outside of the house, and thereupon went into the bedroom where he had left respondent and Duling, and found Duling gone, the only window in the room wide open, and respondent sitting on a hassock at the foot of the bed. There was no exit from the bedroom other than the open window and the door outside of which stood Taylor.

The evidence of the State also tended to show that about eight or nine o'clock in the evening of July 3, 1910, respondent, her sister, Hugh Duling, and said John Duling entered by the window a certain paint shop in said Windsor, and that those four were seen in that shop the next day, July 4, drinking out of bottles, and one of the men and a woman, not respondent, lying on the floor, the woman having her clothes up; and that in the evening of July 4, those four were seen hurriedly to leave that paint shop by the back door and run away. The State relied on the evidence as to what occurred in the paint shop on July 4, only to show an adulterous disposition on the part of respondent; and her only objection thereto was to showing that Hugh Duling was one of the parties, "because he is not on trial here."

Respondent testified that when Thomas made the arrest in the bedroom he said: "I have a warrant for you for adultery with Hugh Duling, and a warrant for John Duling for adultery

with Emma Marcy." Both officers denied that Thomas said that, and respondent offered in evidence the information against John Duling as tending to corroborate respondent as to what Thomas said when he arrested her, and as tending to show that Duling must have known that he was not arrested because of his relations with respondent on the day of the arrest. This offer was excluded, subject to the exception of respondent. The evidence as to the escape of John Duling was admitted subject to the objection and exception of respondent.

*Gilbert A. Davis* for the respondent.

*Homer L. Skeels,* State's Attorney, for the State.

Rowell, C. J.   The respondent's only objection to showing that Hugh Duling was one of the parties in the paint shop the 4th of July was, that he was not on trial in this case. This objection is not made now, but others that were not made below, and therefore is not considered.

The witness Taylor testified without objection that his attention was called to the affair at the paint shop in the time of it. He was then allowed to testify that he afterwards learned who the people were that were in there, to which objection was made but no ground of objection stated. This being so, the objection is not available, it not appearing that the testimony could not be admissible in any state of the case. *Herrick* v. *Holland,* 83 Vt. 508, 77 Atl. 6; *Townshend* v. *Townshend,* 84 Vt. 319, 79 Atl. 388; *Moore* v. *Duke,* 84 Vt. 407, 80 Atl. 194.

The information against John Duling, offered in evidence by the respondent to corroborate her statement as to what the officer said at the time of the arrest and in the presence of Duling, and to show that Duling must have known what he was arrested for, and that it was not for an offence committed that day,— was properly excluded as having no such tendency, for there was nothing to show that the officer had then seen the information, and it does not appear and cannot be assumed that the warrant issued upon it named the person with whom it was alleged the crime was committed, as it would be amply sufficient without naming her,—*State* v. *Durant,* 60 Vt. 176, 12 Atl. 650,— and so it cannot be said that the information afforded any evidence that the officer knew the name of the alleged particeps,

nor any that he named her as the respondent said he did, and so no corroboration; and certainly it afforded no evidence that Duling knew what he was arrested for, though he might well have thought that it was not for any offence committed at that time.

The fact that Duling escaped through the window was admissible because it was one of a group of facts that constituted a transaction that was itself admissible and being proved, the rule being that every fact that is a part of the same transaction as the facts in issue or dispute is relevant, although it may not itself be in issue or dispute, and might be excluded if not a part of such transaction.   *Aiken* v. *Kennison*, 58 Vt. 665, 669, 5 Atl. 757; Steph. Dig. Ev., Chase's ed., 8, and note 3.

*Judgment that there is no error in the proceedings of the county court, and that the respondent take nothing by her exceptions.*