**Bonnie Harris and Ferris K. O'Connell v. Winston Carbonneau, James G. Murphy and State of Vermont**

[685 A.2d 296]

No. 94-592

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed August 30, 1996

434

*Michael Palmer* of *Palmer Legal Services*, Middlebury, for Plaintiffs-Appellants.

*Robert B. Chimileski*, Troy, for Defendants-Appellees Carbonneau and Murphy.

*Jeffrey L. Amestoy*, Attorney General, and *Robert W. Gagnon*, Senior Assistant Attorney General, Montpelier, for Defendant-Appellee State of Vermont.

**Gibson, J.** Plaintiffs Bonnie Harris and Ferris O'Connell appeal from a verdict in defendants' favor following a jury trial on plaintiffs' claims of civil trespass, intentional infliction of emotional distress, and negligence. Plaintiffs contend that the superior court erred in denying their motions for directed verdict and judgment notwithstanding the verdict,[1] and that the superior court should have provided a separate jury instruction on invasion of privacy. We affirm.

---

[1] Plaintiffs' motion for judgment notwithstanding the verdict was filed prior to the amendment of V.R.C.P. 50, which now refers to a "motion for judgment as a matter of law." See V.R.C.P. 50 (amended 1995).

Viewed in the light most favorable to the nonmoving party and excluding the effect of modifying evidence, see *Silva v. Stevens*, 156 Vt. 94, 101, 589 A.2d 852, 856 (1991), the record provides the following facts. On the evening of December 29, 1988, defendant Lieutenant Winston Carbonneau, an Orleans County deputy sheriff, went to Harris's house in Newport to serve a summons and complaint from superior court on O'Connell. O'Connell was asleep on the couch when Carbonneau knocked on the storm door and announced himself. At the time of the visit, Harris and O'Connell were both totally disabled. Harris, who was in a wheelchair, came to the door, and without opening it, asked who it was. Carbonneau identified himself, and Harris opened the inside door and tried unsuccessfully to open the storm door. Carbonneau assisted her in opening the storm door, at which point Harris backed up her wheelchair and Carbonneau stepped inside.

Once inside the house, Carbonneau said he had some papers for Ferris O'Connell and asked Harris if she were Ferris O'Connell. When Harris asked what kind of papers they were, Carbonneau repeated that they were for Ferris O'Connell, and asked if the man he saw seated on the couch was Ferris O'Connell. When Harris again asked what kind of papers they were and whether she could take them, Carbonneau asked the man whether he was Ferris O'Connell. The man nodded and Carbonneau asked O'Connell if he wanted the papers brought over to him. Harris backed up her wheelchair so Carbonneau could walk past her to the couch, and O'Connell stood up. Carbonneau said, "Ferris O'Connell, these papers are a summons and complaint." O'Connell thereupon became angry, swore at Carbonneau, and ordered him to get out of the house. Carbonneau attempted to hand the papers to O'Connell, who would not take them. Carbonneau then dropped the papers on the floor and told O'Connell that he had been served. As Carbonneau was leaving, O'Connell hurled a number of objects after him, including several pillows, his temporary cast and one of his aluminum crutches.

At trial, plaintiffs' testimony contradicted Carbonneau. Harris testified that Carbonneau never announced who he was, but said merely, "Small Claims Court" when he knocked. According to Harris, when she opened the inside door, Carbonneau opened the outside door and barged into the house uninvited. Harris testified that she tried to explain O'Connell's disabled condition to Carbonneau, but Carbonneau ignored her requests to serve the papers on her or on O'Connell's lawyer, or to call O'Connell's doctor. Rather, Carbonneau

insisted on confronting O'Connell with the papers. O'Connell testified that he became angry when Carbonneau announced that he had a writ of attachment from superior court because O'Connell had thought from Carbonneau's initial announcement that the papers were from small claims court. Plaintiffs insisted that O'Connell never threw a crutch. They testified that, as Carbonneau was opening the door to leave, one of Harris's cats started for the door. When Harris bent over to grab the cat, she was struck in the side of the head by the door, which cut her cheek and severely damaged her mouth and bridge-work.

Plaintiffs sued Carbonneau for trespass, intentional infliction of emotional distress, assault and battery,[2] and negligence. In addition, plaintiffs alleged that, "[b]y entering plaintiffs' residence without permission and against plaintiffs' wishes, defendant Carbonneau wrongfully invaded plaintiffs' privacy."

At the close of the evidence, plaintiffs moved for a directed verdict on the issue of trespass, claiming there was no evidence that Carbonneau had an express or implied invitation to enter the home. The court denied the motion.

Plaintiffs requested a jury instruction for invasion of privacy that read, in relevant part, "Anyone who intrudes into the home of another without permission has invaded the privacy of the latter person and is liable to that person for any damage proximately caused by that invasion of privacy." The judge instructed the jury on trespass, intentional infliction of emotional distress, and negligence, but not on invasion of privacy. The instruction on trespass stated, "The Plaintiffs must prove by a preponderance of the evidence . . . a lack of express or implied permission to either enter the home or to remain there if the initial entry was welcomed or invited."

After the jury returned a verdict for defendants, plaintiffs' motion for judgment notwithstanding the verdict or for a new trial was denied.

## I.

Plaintiffs first contend that they were entitled to a directed verdict, or to judgment notwithstanding the verdict, on their claim of trespass, because the evidence demonstrated that Carbonneau entered the house on his own initiative without invitation.

---

[2]Plaintiffs voluntarily dismissed their claim of assault and battery before trial.

■ A motion for judgment notwithstanding the verdict raises substantially the same legal questions as a motion for directed verdict and is treated in like manner. *Center v. Mad River Corp.*, 151 Vt. 408, 413, 561 A.2d 90, 93 (1989). If there is any evidence reasonably and fairly supporting the nonmoving party's claim, the motion should be denied and the case should go to the jury. *Lussier v. North Troy Engineering Co.*, 149 Vt. 486, 490, 544 A.2d 1173, 1176 (1988). The weight of the evidence and the credibility of the witnesses are questions for the jury, and on appeal, all conflicts are to be resolved against the moving party. *Jewell v. Dyer*, 154 Vt. 486, 489, 578 A.2d 125, 127 (1990).

■ A person who intentionally enters or remains upon land in the possession of another without a privilege to do so is subject to liability for trespass. Restatement (Second) of Torts § 158 (1965). There is no recovery for trespass, however, where the possessor has consented to the conduct. See *id.* cmt. e. A process server may peaceably enter a dwelling by walking through an open door without invitation or with the consent of the possessor. See *id.* § 208 cmt. j. But,

> [e]ven when the person concerned does not in fact agree to the conduct of the other, his words or acts or even his inaction may manifest a consent that will justify the other in acting in reliance upon them. This is true when the words or acts or silence and inaction, would be understood by a reasonable person as intended to indicate consent and they are in fact so understood by the other. This conduct is not merely evidence that consent in fact exists, to be weighed against a denial. It is a manifestation of apparent consent, which justifies the other in acting on the assumption that consent is given and is as effective to prevent liability in tort as if there were consent in fact.

*Id.* § 892 cmt. c (1979).

In this matter, the evidence supports Carbonneau's contention that Harris gave him implied consent to enter the house. Although Harris denied giving an express or implied invitation to Carbonneau to enter, Carbonneau testified that Harris opened the inside door, attempted to open the outside door, and then backed up her wheelchair as he came in. In addition, Harris testified that she did not forbid Carbonneau to enter or ask him to leave. Because there is evidence to support Carbonneau's claim, the question of whether Carbonneau had implied consent to enter the house was properly left to the jury.

Plaintiffs contend, however, that Carbonneau committed a separate trespass by failing to serve the papers on Harris at the door. Plaintiffs point to V.R.C.P. 4(d)(1), which provides:

> Personal service within the state shall be made . . . [u]pon an individual by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . .

We agree that the rule allowed Carbonneau to serve Harris without entering the house. But before doing so, Carbonneau would first have had to determine whether Ferris O'Connell lived there. Whether Carbonneau's actions in attempting to ascertain O'Connell's residence constituted a trespass is a question of fact for the jury. *Page v. Town of Newbury*, 113 Vt. 336, 340, 34 A.2d 218, 220 (1943).

The case relied on by plaintiffs, *Moore v. Duke*, 84 Vt. 401, 80 A. 194 (1911), is inapposite. In that case, a process server was held to be a trespasser because he failed to enter the writ in the court to which it was returnable. The failure "vitiated all his previous acts, rendered the purpose of his entry unjustifiable, and made him a trespasser from the beginning." *Id.* at 405, 80 A. at 196. In the present matter, there is no allegation or evidence that Carbonneau failed to file a return of service, and the record does not justify a ruling as a matter of law that Carbonneau was a trespasser.

## II.

Plaintiffs also argue that they were entitled to a separate jury instruction on their claim of invasion of privacy.

A party who claims error in the jury charge has the burden of establishing both that the charge was wrong and that prejudice resulted from that error. *Mobbs v. Central Vermont Ry.*, 155 Vt. 210, 218, 583 A.2d 566, 571 (1990). In reviewing jury instructions, we look at them in their entirety. *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 143, 636 A.2d 744, 753 (1993). If the charge as a whole "'breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it, it ought to stand.'" *Choiniere v. Sulikowski*, 126 Vt. 274, 277, 229 A.2d 305, 307 (1967) (quoting *In re Moxley's Will*, 103 Vt. 100, 114, 152 A. 713, 718 (1930)).

The court has the duty to charge upon all theories of law raised by the pleadings and evidence. *Arnold v. Cantini*, 154 Vt. 142, 145, 573

A.2d 1193, 1195 (1990). A pleading must give fair notice of the claim and the grounds upon which it rests. V.R.C.P. 8(a); *Levinsky v. Diamond*, 140 Vt. 595, 600, 442 A.2d 1277, 1280 (1982). The evidence produced at trial must prove all the elements of the prima facie case. *Seewaldt v. Mount Snow, Ltd.*, 150 Vt. 238, 240, 552 A.2d 1201, 1202 (1988).

Plaintiffs' pleadings did not support a theory of invasion of privacy. Invasion of privacy is a substantial, intentional intrusion upon the solitude or seclusion of another, or upon his private affairs or concerns, which would be highly offensive to a reasonable person. *Hodgdon v. Mount Mansfield Co.*, 160 Vt. 150, 162, 624 A.2d 1122, 1129 (1992); Restatement (Second) of Torts §§ 652A, 652B (1977). The complaint alleged only that Carbonneau "wrongfully invaded plaintiffs' privacy" by entering the house "without permission and against plaintiffs' wishes." The complaint failed to state that Carbonneau's conduct was intentional, substantial, or highly offensive to a reasonable person. Although the rule does not require that a pleading contain a specific and detailed statement of the facts supporting a cause of action, *Mintz v. Matalon*, 148 Vt. 442, 444, 535 A.2d 783, 785 (1987), the complaint must nonetheless provide sufficient clarity and certainty to enable a defendant to respond. *Central Vt. Pub. Serv. Corp. v. Town of Springfield*, 135 Vt. 436, 440, 379 A.2d 677, 680 (1977). Plaintiffs' cause of action, although denominated as sounding in invasion of privacy, alleged no more than was alleged in the counts for trespass and negligence.

The jury instruction requested by plaintiffs was similarly defective in that the elements of invasion of privacy were not specified. A trial judge is not required to correct proposed charges that are mistaken statements of the law. *Schneider v. Lindenmuth-Cline Agency*, 620 A.2d 505, 508-09 (Pa. Super. Ct. 1993). We see no error in the court's failure to instruct the jury as requested.

In light of our disposition, we need not address plaintiffs' claim of respondeat superior with respect to defendants Murphy and the State of Vermont, or the immunity defense raised by the State of Vermont.

*Affirmed.*