### ZILVER v. ROBERT GRAVES CO.

(Supreme Court, Appellate Division, First Department.   July 7, 1905.)

1. TRIAL—CROSS-EXAMINING PARTY'S OWN WITNESS—SURPRISE.

Where plaintiff calls a witness under a misapprehension, induced by a previous written statement, as to what he will testify to, it is not error to allow plaintiff to ask leading questions.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, § 848.]

2. FELLOW SERVANTS.

An elevator operator is a fellow servant of one employed by the same master to address and stamp envelopes.

[Ed. Note.—For cases in point, see vol. 34, Cent Dig. Master and Servant, §§ 475–479.]

3. MASTER AND SERVANT—PERSONAL INJURIES—NEGLIGENCE OF FELLOW SERV-
ANT.

Where plaintiff alleged that his falling down an elevator shaft was
caused by insufficient light, and it appeared that sufficient lights were
furnished by the master, but that a fellow servant had failed to light
them, the negligence, if any, was that of the fellow servant.

4. SAME—ORDER OF CO-EMPLOYÉ—WANT OF AUTHORITY.

Where plaintiff was injured by falling into an elevator shaft because
he had, in obedience to the instructions of another employé, turned out
the lights, he was not entitled to recover of the master; it not appearing
that the other servant had charge of the premises, or represented the
master in giving the instruction.

Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by Harry Zilver, by guardian, against the Robert Graves
Company. From a judgment for plaintiff, and from an order de-
nying a motion for a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN,
PATTERSON, and INGRAHAM, JJ.

William A. Jones, Jr., for appellant.
Edward Hymes, for respondent.

McLAUGHLIN, J.   The plaintiff on the 6th of October, 1903,
sustained personal injuries by falling into an elevator shaft; and he
brought this action to recover therefor, upon the ground that such
injuries were caused by defendant's negligence.   In his complaint
he alleged that at the time the injuries were sustained he was in the
defendant's employ, and, having finished the work in which he was
engaged, proceeded to the elevator shaft for the purpose of taking
the elevator to the ground floor; that the door leading into the ele-
vator was open at the time, although the car was not at that floor,
and he, assuming it was there, stepped into the shaft, and fell to
the basement.   The negligence charged was that the defendant had
not properly lighted the elevator, or that part of the building
through which the elevator shaft ran; that it employed an incom-
petent person to operate the elevator; and that it permitted the door
to be open when the elevator was not on the floor at which plaintiff
was at work.   The answer denied the acts of negligence alleged.
At the trial there was a sharp conflict of evidence between the par-
ties as to just how the accident occurred.   The plaintiff himself,
a lad about 15 years of age, testified that he was immediately prior
to the accident working overtime, pursuant to a request of the de-
fendant; that the work in which he was engaged was addressing
and stamping envelopes; that the desk at which he performed this
work was about 50 feet in the rear of the elevator shaft; that the
elevator was used for carrying both passengers and freight; that
there were only three lights in the room in which he worked, one
near his desk, and two a short distance away, and these he extin-
guished, as he had been directed to do, when he completed his
work; and that he had been told not to interfere with the other

lights on that floor. In describing what occurred at and immedi-
ately prior to the time he fell into the shaft, he said:

"I could see to do that work by the two lights on the bookkeeper's desk
and the one light over my desk. The bookkeeper's desk was about ten feet
from my desk, in the same part of the loft. When I finished addressing the
envelopes, I put on the stamps and turned out the lights. I had received in-
structions as to that. I had received instructions to light three lights when
working nightwork, and to turn them out when I had finished my work.
* * * I was told to light these three in my nightwork, and leave the rest
alone. I had never touched any of the other lights. When I had turned out
those three lights, as I have described, the loft was dark. * * * I was
going to the elevator to use it in going down. I walked slowly, and felt my
way along the wall. I knew the general direction in which the elevator was.
I was feeling my way along the wall. I was feeling for the bell—to ring the
elevator bell—and I came to the opening and stepped in. That was the open-
ing of the elevator shaft. I didn't know what it was then. I was uncon-
scious when I fell into this elevator shaft, and the next thing I remember was
waking up in the hospital."

The person in charge of the elevator—one Broderick—was called
as a witness by the plaintiff, and stated that he and one Schlicht,
another employé, were at the time in question on the same floor
with the plaintiff, getting some paper to put onto the elevator, and
there were then two gas jets burning in front of the elevator shaft.
Complaint is made by the appellant as to the way in which plain-
tiff's counsel was permitted to examine this witness, but I am of
the opinion that the court did not err in permitting leading ques-
tions to be put to him. It is quite apparent from reading the testi-
mony of the witness that he was hostile to the plaintiff, and had
been called by him under a misapprehension as to what his testi-
mony would be; such misapprehension being largely due to a writ-
ten statement previously made by the witness as to his knowledge
of the cause of plaintiff's injuries. Under these circumstances, the
trial court, being satisfied that the witness was adverse, was justi-
fied in permitting leading questions to be propounded, and it was,
in effect, cross-examining him as to the statements theretofore
made. Maloney v. Martin, 81 App. Div. 432, 80 N. Y. Supp. 763,
affirmed 178 N. Y. 552, 70 N. E. 1102.

On the part of the defendant, one Schlicht was called, and he
corroborated the witness Broderick to the effect that there were
two lights burning in front of the elevator shaft at the time the
plaintiff fell into it. He testified that he was engaged with Bro-
derick in putting paper onto the elevator at the time the accident
occurred; that he was at work on the same floor that the plaintiff
was, and, from where he was working, he could plainly see the
shaft; that the elevator door was open, and he saw the plaintiff
"sneaking over to the elevator. He pulled the rope, and the ele-
vator went to the top. * * * He went to stop it, and, of course,
missed the rope and went down below."

The testimony of the plaintiff and the two witnesses mentioned
is substantially all there is bearing on the cause of the accident,
and it was for the jury to pass upon their credibility. That they
believed the testimony of the plaintiff is evidenced by their ver-

dict, and the same cannot be disturbed unless legal error was committed during the trial. The defendant contends that such error was committed by the trial justice refusing to charge the following request, to which an exception was taken:

"If the jury find that the proximate cause of the injury to the plaintiff was the failure of the elevator operator to close the door of the elevator shaft, such failure was the negligence of a fellow servant, and their verdict must be for the defendant."

I am of the opinion that the refusal to charge as requested constituted error which necessitates a reversal of the judgment appealed from. Broderick, the person in charge of the elevator, was a fellow servant of the plaintiff. They were engaged in a common employment, and, though doing different work, were co-servants, employed by a common master. Stringham v. Hilton, 111 N. Y. 188, 18 N. E. 870, 1 L. R. A. 483. The defendant furnished lighting facilities which, if properly used, were sufficient for all purposes. This fact is not disputed. No claim was made that the elevator was not perfect in every respect, nor was any proof offered to establish the allegation of the complaint that it did not furnish a competent person to operate the same, whose duty it was to light the lights in front of the elevator shaft. If, therefore, plaintiff's injuries were caused by Broderick's failure to light the lights in front of the shaft, or to close the door leading into it, such failure was his, and not the defendant's, negligent act. Stringham v. Hilton, supra; Geoghegan v. Atlas S. S. Co., 146 N. Y. 369, 40 N. E. 507; Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521; Earle v. Clyde S. S. Co., 103 App. Div. 21, 92 N. Y. Supp. 839.

In addition to this, if, as the plaintiff testified, it was dark on the floor where he was at work after he had extinguished the lights, and by reason thereof he fell into the shaft, defendant was not liable, because such darkness was caused by the plaintiff himself, acting, it is true, under instructions from Bateman, the bookkeeper. But Bateman was not in charge of the premises, nor is there any testimony to show that he represented the master in giving the instructions which he did. The place furnished by the master for the plaintiff to work in was reasonably safe. It had been equipped with appliances to properly light it. The same can be said of the elevator shaft and the door leading into it. Competent servants had been provided to run the elevator, and see that the lights in and about the shaft were lighted. If they failed to perform their duty, it was a risk which the plaintiff assumed when he entered and continued in the defendant's employ. One who engages in work with others takes the chances not only of his own negligence, but the negligence of his fellow servants, and in case of injury from either he cannot recover damages from his employer.

If the foregoing observations are correct as to Broderick, then it follows that the court erred in not charging the jury as requested, because, if they had found that the plaintiff's injuries were due to his negligence, then their verdict would necessarily have been for the defendant.

The judgment and order appealed from, therefore, must be reversed, and a new trial ordered, with costs to appellant to abide event. All concur, except PATTERSON, J., who dissents.