## American Bridge Company v. Bernard Bialk.

### Gen. No. 12,706.

1. ASSUMED RISK—*when doctrine of, precludes recovery.* Where the danger from which the injury resulted was obvious and apparent, the doctrine of assumed risk applies as between master and servant and a recovery cannot be had.

2. ASSUMED RISK—*what does not prevent operation of.* The command to a servant to do an act which relieves the servant from an assumption of risks incident to that which he. is ordered to do, must be the command of the master, or of one standing in that relation to the servant.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed, with finding of fact. Opinion filed October 23. 1906.

HORTON & BROWN, for appellant.

HUMMER, MURPHY & McDONALD, for appellee; SIMON KRUSE, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

In an action on the case plaintiff recovered a judgment against defendant, his employer, for $3,750 for personal injuries alleged to have been sustained through the negligence of the defendant, and the defendant appealed.

The defendant had in Chicago extensive bridge works and in a certain room were machines used to

American Bridge Co. v. Bialk.

straighten or shape steel or iron plates.  In the east part of this room the plates to be shaped or straightened were stored in piles running north and south. Seventeen feet above the floor were stationary tracks running east and west, placed twelve feet apart.  Upon each of these tracks ran a traveler into the lower end of which a hand tackle could be hooked.  The tracks, travelers and tackles, combined, constituted a traveling crane by means of which a steel plate could be raised, lowered and moved.

Plaintiff was a member of a gang of five known as hustlers, of which gang one Bitter was leader.  When a man in charge of a straightening machine wanted a plate, he gave the gang of hustlers the dimensions of the plate he wanted, and it was then their duty to find such plate and by means of said crane to take it to the straightening machine.

On the day of the accident, Johnson, who was in charge of a straightening machine, told one of the said hustler gang that he wanted a steel plate thirty feet long, eighteen inches wide, three-quarters of an inch thick.  Bitter was then in another part of the shop engaged in other work, and the other members of the hustler gang, without telling Bitter that Johnson wanted a plate, undertook to find the plate and take it to Johnson's machine.  They found it and attached to it two tackles, one near its north end, the other a short distance south of its center.  Plaintiff looked for a third tackle to attach to the south end, but was unable to find one.  The plaintiff was not directed by any one to get a third tackle, did not report to any one that he was unable to find a third tackle, but he and the other three men, Bitter still being absent, without further order or direction proceeded to raise and move the plate with only the two tackles.  With the two tackles they raised the plate so that it swung clear, but in doing so they raised the tackle attached to the plate near its north end much higher than they raised the tackle

attached to the plate just south of its center, and as the plate hung suspended from the tackles its north end was six feet higher than its south end. With the plate in this position, they moved the crane west several feet until it reached a pile of plates which the south end of the plate hung too low to clear. . The men engaged in moving the plate might by pulling up the tackle attached near the center of the plate have raised the south end of the plate so that it would clear the pile of plates, and by pulling up the center tackle to a level with the tackle at the north end, or by pulling up the center tackle some and lowering the tackle at the north end some, they could have put and kept the plate in a horizontal position or nearly so. The men made no attempt to raise the south end of the plate by pulling up the center tackle, but the plaintiff of his own motion, without an order from anyone, went to the south end of the plate and attempted to lift it up so that it would clear the pile of plates, and as he did so the plate slipped downward through the hooks and the south end of the plate struck plaintiff's foot and inflicted the injuries complained of.

The plate lay upon its side supported at each tackle by a pair of hooks which was a part of the tackle. A pair of hooks was like a pair of tongs—the legs made of ¾ inch iron rods with perhaps two inches of the lower end of each leg turned up inwards. Upon such turned up ends the plate rested, held from slipping lengthwise only by its weight upon such turned up ends. So long as the plate was kept level or nearly so, there was no tendency for it to slip through the hooks nor danger that it would do so, but with one end of the plate higher than the other, with the plate upon an incline, there would be a tendency for it to slip downward through the hooks. In this case the plate had been planed and was smooth, and rested upon four small bearings. The angle of inclination would not therefore have to be great to cause the plate to slip

downward through the hooks, and it is clear that it did so slip, because, by reason of the inclination of the plate, the force of gravity became sufficient to overcome the friction of the plate upon its bearings in the hooks.

As has been said, the plaintiff and the men engaged with him might, by the proper use of the tackle they had, attached to the plate as they were attached, have kept the plate horizontal or nearly so and prevented any danger of its slipping through the hooks. In place of keeping the plate horizontal, they pulled the tackle at its north end much above the tackle near its center, raised the north end of the plate about six feet above its south end, and as a direct result and consequence of such act the plate slipped downward through the hooks and injured the plaintiff. The plaintiff and the other men engaged with him in moving the plate were fellow-servants and for an injury to the plaintiff resulting directly from the negligent act or omission of any act of said men the defendant is not, in the absence of special circumstances not shown in this case, liable to the plaintiff.

But there are other objections fatal to the right of the plaintiff to recover in this action.

Plaintiff's testimony does not show that there were not other tackles in the works of the defendant; but only that he was unable to get another tackle. Trost, a witness for plaintiff, testified that he was engaged at a bench a few feet away from the crane laying out work upon a plate; that he had two tackles which he used to raise plates and put them upon the bench; that plaintiff applied to him for a tackle and that he refused to give him one. Lebold, the foreman of the department in which plaintiff worked, testified that there were several hundred tackles in the shop; that men sometimes refused to give tackles to each other, and that the leaders of the gangs had instructions when they could not get tackles to notify him.

Plaintiff did not notify either Lebold, his foreman, or Bitter, the leader of his gang, that he could not get another tackle, but with the other men of his gang proceeded to attempt to raise and move the plate with two tackles.

If it be admitted that two tackles did not make the crane a reasonably safe appliance with which to raise and move the plate in question, and that it was the duty of the defendant to provide more tackles, we do not think that the evidence in this record is sufficient to warrant or support an inference that the defendant failed to provide a sufficient number of tackles.

Again, plaintiff before he was injured knew that he and the men engaged with him had but two tackles in use. Whatever danger there was in raising or moving the plate with but two tackles was obvious and apparent and the risk was assumed by him. McCormick Machine Co. v. Zakzewski, 220 Ill. 522, and cases there cited.

It only remains to consider the contention of appellee that he was relieved from the assumption of the risk incident to the raising and moving of the plate with but two tackles by Johnson's orders to bring him the plate and his later orders to plaintiff to work the best he could, to bring him the iron, etc.

The command to a servant to do an act which relieves the servant from the assumption of risks incident to that which he is ordered to do, must be the command of the master, or of one standing in that relation to the servant.

Plaintiff testified that after the plate had been hoisted about six feet Johnson called out to him, "to hurry up;" "to bring that iron to him, that he was in a hurry;" that Johnson said: "Work the best you can, I want that iron," and as the crane was in plain view of Johnson, it may fairly be inferred that Johnson knew that the men had in use but two tackles.

In his testimony plaintiff called Johnson his fore-

American Bridge Co. v. Bialk.

man, but he stated no facts to warrant or support the conclusion that Johnson was his foreman. It is undisputed that Johnson had charge of a straightening or shaping machine; that he had three helpers at said machine; that plaintiff was not one of those helpers, but was one of the gang of hustlers whose duty among others it was to take a plate to Johnson's machine when he called for one. Johnson had authority to direct the hustler to bring him a particular plate. This authority he possessed in common with every man who had charge of a similar machine, or of a machine or bench where he required plates. But Johnson had no other or further authority over the hustlers than the right to order them to bring him a plate. He had no authority to order or direct how, in what manner, or by what means or appliances they should move such plate. He exercised all the authority he had over the hustlers when he called upon them to bring him a particular plate. There is no evidence in the record to warrant or support the inference that he possessed any other or further authority over them, and certainly none that he had any authority to control or direct them in the performance of the work of raising or moving the plate he had called for, and therefore no evidence that in the performance of that work he stood toward them in the relation of master. The evidence in the record is not sufficient to warrant a recovery by the plaintiff against the defendant, and the judgment will, therefore, be reversed with a finding of fact.

*Reversed with finding of fact.*