CASE 94.—ACTION BY EDWARD POPE'S ADMINISTRATOR
    AGAINST THE SOUTHERN RAILWAY COMPANY
    FOR THE NEGLIGENT DEATH OF HIS INTES-
    TATE.—May 14, 1909.

## Southern Ry. In Ky. v. Pope's Admr.

Appeal from Jefferson Circuit Court (Common
Pleas Branch, Third Division).

MATT O'DOHERTY, Judge.

Judgment for plaintiff, defendant appeals.—Re
versed.

1.  Master and Servant—Injury to Servant—Presumptions.—In an
    action against a railroad company for the death of a cinder
    pit man crushed between the bumpers of a car and an engine
    operated by another cinder pit man, who had called deceased
    to help him move the car, the court will not presume any fact
    necessary to establish plaintiff's claim.
2.  Master and Servant—Injury to Railroad Employe—Acting
    Without Authority—Liability of Company for Accident.—That
    a cinder pit man, who was acting as hostler's helper in run-
    ning a yard engine falsely stated to decedent, his co-em-
    ploye, that the general foreman told him to direct decedent
    to act in his place while he took charge of the engine with-
    out authority, does not fix the responsibility of the railroad
    company for the death by accident of decedent while acting
    on such statement.
3.  Master and Servant—Action for Death of Railroad Employe—
    Evidence as to Co-Employe's Authority.—In an action against
    a railroad company for the death of a cinder pit man, evi-
    dence held not to show that a co-employe, acting as hostler's
    helper in running a yard engine, was authorized to call on
    decedent to act as his helper while he took charge of the en-
    gine and to direct decedent in the work of switching a car,
    but, on the contrary, to affirmatively show want of such au-
    thority.
4.  Master and Servant—Obeying Unauthorized Orders—Assump-
    tion of Risk of Injury.—If a cinder pit man was without au-
    thority to act as hostler of a yard engine, he could not, in the
    absence of the hostler, whom he was assisting, order a co-
    employe to act as helper while he took charge of the engine,
    and, if the other chose to obey such unauthorized orders, he
    did so at his peril, and assumed all the risk involved in the
    task which he undertook.

5.  Master and Servant—Railroad Employes—Negligence in
Performing Usurped Duties—Liability of Company.—A mere
volunteer or intruder into the office of an engine hostler does
not thereby become the agent of the company so as to bind
it for his negligence in performing his usurped duties.

EDWARD P. HUMPHREY for appellant.

POINTS AND AUTHORITIES.

1. The peremptory instruction asked for by the appellant (defendant), should have been given because a servant who is injured while doing work other than that which he has been employed to perform, has no right of recovery against his master.
L. & N. v. Pendelton's Admr., 31 K. L. R. 1025; 104 S. W. 382;
Hatfield v. Adams, 123 Ky. 428; Mitchell-Tranter Co. v. Ehmett,
23 K. L. R. 1788; Ehmett v. Mitchell-Tranter Co., 80 S. W. 1148;
Shadoan's Adm'r. v. C. N. O. & T. P., 82 S. W. 567; Floyd, By,
&c. v. Kentucky Lumber Co., 23 K. L. R. 1914; Derrickson's
Adm'r. v. Swann-Day Lumber Co., 115 S. W. 191.

2. Any person of ordinary intelligence must take notice of a
danger that is obvious and protect himself against it. Wilson's
Adm'r. v. Chess & Wymond, 25 K. L. R. 1656; Hilman Land &
Iron Co. v. Littlejohn, 28 K. L. R. 983.; Hutchinson v. Cohankus
Mfg. Co., 112 S. W. 899.

3. Where contributory negligence is shown by uncontradicted
evidence the plaintiff can not recover. Illinois Central R. R. v.
Mercer, 24 K. L. R. 909; L. & N. v. Mounce's Adm'r., 28 K. L. R.
936.

4. Contributory negligence bars recovery even though defendant was negligent. L. & N. v. Sights, 121 Ky. 203.

5. It was error to admit hearsay testimony offered by the appellee. Board's Evidence, Tr. p. 12 and 13.

6. The authority of an agent can not be established by his declarations alone. Edmiston v. Hurley, 99 S. W. 260; Peyton v. Old
Woolen Mills Co., 91 S. W. 819; Hensley v. McDonald, 108 S. W.
362; Dieckman v. Weirich, 24 K. L. R. 2340.

7. The appellant (defendant) was entitled to a continuance
upon the filing of the amended petition by the appellee (plaintiff).
Civil Code, Sec. 136; Sun Insurance Office v. Stegar, 112 S. W. 922.

8. The court erred in giving to the jury, over appellant's objections, instructions Nos. 1 and 2.

9. The court erred in refusing to give to the jury instructions
1, 2, 3, 4 and 8 offered by the appellant, as the appellant was entitled to have its defense presented in a concrete form by the
instructions. L. & N. v. King's Adm'r, 115 S. W. 196.

PRYOR, SAPINSKY & CASTLEMAN and WALSH & WALSH
for appellee.

AUTHORITIES CITED.'

1. The master's responsibility distinguished as between servants and volunteers. L. & N. v. Pendleton's Adm'r, 31 R. 1025,
and cases there cited.

2. The master's responsibility for one acting in place of regular superior servant.  Gould Construction Co. v. Childer's Adm'r., 112 S. W. 622.

3. The care, grade and authority of servants a question for the jury.  L. & N. v. Mahan, 113 S. W. 886; Crabtree Coal Mining Co. v. Sample's Adm'r., 24 R. 1703; 72 S. W. 24.

4. Master's failure to instruct inexperienced servant is negligence.  W. A. Gaines & Co. v. Johnson, 37 R. 58.

OPINION OF THE COURT BY JUDGE BARKER.—Reversing.

This action was instituted by the appellant, the administrator of Edward Pope, deceased, to recover damages of the Southern Railway Company in Kentucky for the death of Pope, alleged to have been caused by the negligence of the employes of the railway company.  The negligence alleged was that Pope, who was a cinder pit man, engaged in cleaning the ashes and cinders out of engines, was placed by the employes of the company at the hazardous duty of acting brakeman in switching cars about the yards of the company without having first given him any instructions as to these new duties, or any warning as to the dangers attending them, and that, because of this failure of duty on the part of appellant's employes, while coupling an engine to a car he was caught between the bumpers and instantly crushed to death.  The railway company denied all the material allegations of the petition, and pleaded contributory negligence on the part of Pope.  These affirmative allegations having been controverted by reply, the issues were completed.  A trial by jury resulted in a verdict in favor of the plaintiff in the sum of $3,000; and of the judgment based upon this verdict the railway company now complains.

The crucial question upon which this case turns, as we see it, is the authority of William Fisher to direct

Edward Pope to act as brakeman in assisting him to couple the engine to the car, in doing which he was killed.

. Fisher, Graham Board,. and Edward Pope, all three young negro men, were employed as cinder pit men in the yards of the appellant company. Their duty was to scrape out the ashes and cinders from the fire boxes of the engines into a pit prepared for that purpose. In addition to these duties they were called on, when the helper of the engine hostler was absent, to assist the hostler in the capacity of switchmen or brakemen. On the day Pope was injured William Fisher had been directed by Edward Wolf, who was acting hostler of the yard engine, to assist him as hostler. There was a car loaded with lumber in the yard, which Harvey Rhodes, the general foreman of the yard, desired to have moved from the track upon which it was standing onto another track in the yard. Rhodes said to Edward Wolf, who was in the engine, that he wanted the car moved. At this time Fisher was standing on the ground. Shortly afterwards Wolf, without obeying the orders given him by Rhodes, left the engine and went to a different part of the yard in order to look after an incoming train. When Wolf left Fisher seems to have taken possession of the engine, and called Pope, who was at the cinder pit, to come over and act as his helper, telling him that Mr. Rhodes said that he (Pope) must do this. Thereupon Pope left the. cinder pit, and acted as helper, or brakeman. The engine was propelled along the track to the car that was to be moved. Pope then adjusted the coupler, and gave Fisher the signal to back down and couple. This was done, the engine being moved quite slowly, but for some reason unex-

plained in the record the collision between the engine and the car, failed to couple them. Thereupon Pope gave Fisher the proper signal to pull back for another trial. When he was ready, he again signaled to Fisher to back down on the car. Again the effort to couple the cars was unsuccessful. The engine was for the third time pulled back, and then Pope got on the foot board around the tender of the engine, which was made for the purpose, and gave the signal that the engine should be backed against the car. The third collision caught Pope between the bumpers, instantly crushing him to death. How or why he got between the bumpers is not explained. We think it was clearly shown that Pope was inexperienced in the duties of hostler's helper or brakeman, and that Fisher gave him no instruction concerning the duties imposed upon him, or of their danger; and undoubtedly, if Fisher had the authority to direct Pope to do the work of hostler's helper, the right of the appellee to recover damages for his death must be conceded. This authority, therefore, is the only question necessary to be discussed.

Fisher, as said before, was himself a cinder pit man, being what is called by the witnesses "fire knocker." He had been acting as hostler's helper, but there is nothing in the record to show that he was authorized by any one to act himself as hostler or engineer. Edward Wolf was acting in this capacity, and he had directed Fisher to assist him as helper, but when Wolf left the engine to attend to other duties in a different part of the yard, there is no evidence whatever that he, or any one else in authority, authorized Fisher to take charge of the engine or to operate it. It is true both Fisher and Graham Board

say that he (Fisher) had on several occasions moved engines from over the pit after they were cleaned so that other engines might come on and be cleaned; but this obviously is a very different proposition from operating an engine through the yards from one track to another, switching cars, or from having authority to direct another cinder pit man to act as his helper.   Fisher, Graham Board and Davis all testified that it was their duty, when called on by the hostler, to assist him as his helper, but no one testified that the hostler's helper had the authority to take charge of an engine and operate it as hostler, or to call on any one else to assist him as helper.   The evidence, therefore, narrows down to this one point: Whether Edward Pope was ordered to perform the perilous duties at which he lost his life by one having authority to direct him to do it.   The court will not presume, in the absence of testimony, any fact necessary to establish the plaintiff's claim.   Fisher, whose deposition was read in behalf of the plaintiff, denied that he called Edward Pope to assist him, but said that Pope came to him and offered to perform the duties of hostler's helper; but he does not pretend that any one authorized him to act as hostler or to direct Pope to act as hostler's helper, or to accept the services of Pope as such, if his story be true, that Pope volunteered to help him.

No argument is necessary to show that it requires some skill to move an engine about the yards of a railroad company, and to switch cars from one track to another.   To do this the corporation has skilled men called "hostlers," and, while the hostler might be clothed with authority to order cinder pit men to assist him as helpers, it would not follow that the

helper could usurp the duties of hostler, and then, in turn, order other cinder pit men to act as his helpers. Graham Board in his testimony for plaintiff shows that he understood that Fisher had no authority to order him to act as hostler's helper; for, when told by Fisher to come and help him, he replied: "No, I ain't got no time, because I want to get these ashes out of the pit." This answer is not that of an inferior who must obey the orders of a superior. After Board refused to come and act as hostler's helper for Fisher, the latter said: "Come on, Eddie (this to Pope), Harvey Rhodes said for me to tell you to come over and move this engine from where we moved it back on the same track." This shows that Fisher was not undertaking by his own authority to order Pope to assist him. On the contrary he gave (falsely) Harvey Rhodes' order for Pope to come over and help him. The fact that Fisher falsely stated that Rhodes told him to direct Pope to act as hostler's helper does not change the responsibility of the company with reference to the unfortunate accident which afterwards happened. Fisher, whose deposition, as said before, was introduced, and read by the plaintiff states most positively that he was not Pope's superior in authority; that he had no right to give him orders, or direct him to do any work; that he did not give Pope any orders; and that he himself had never before switched cars or done anything more than to move engines off of the cinder pit. So that the sum total of the evidence as to Fisher's authority to call on Pope and direct him to act as hostler's helper or brakeman not only falls far short of establishing his right so to do, but, on the contrary, affirmatively shows his want of such authority. The de-

fendant's evidence on this point consists of the testimony of Harvey Rhodes, Edward Wolf, and William B. Branham, all of whom testified that not only did Fisher not have authority to act as hostler or to direct others to assist him as such, but, on the contrary, that it was positively against the rules of the company for him to act as hostler, that he had no authority over Pope of any sort, and that there was a positive rule prohibiting unauthorized employes from in any wise interfering with the engine.

In the case of Hatfield v. Adams, 123 Ky. 428, 96 S. W. 583, 29 R. 880, this court, speaking through Judge Settle, upon the principle we are now discussing, said: ''So, to hold the master liable for an injury to one employe caused by the negligence of another, it must be made to appear that the injury was received in the performance of a service for the master within the scope of the employment of the person injured, and that, in requiring that particular service, the servant through whose negligence the injury resulted had authority to represent the master, and by reason thereof was the superior of the person injured. Otherwise, in the performance of such service the negligent servant and one injured must be regarded as fellow servants, or the latter as a mere volunteer in doing an act not required by his employment.'' The case of Mitchell-Tranter Co. v. Ehmett, 65 S. W. 835, 23 R. 1788, 55 L. R. A. 710, involved a question nearly akin to the one at bar. Ehmett, an employe of the corporation, was hurt by going upon the roof of the building in which the business was carried on. He claimed that he had been sent upon a dangerous errand without being warned of the danger involved therein, and he testified that he went on the

roof in obedience to a request of an employe called a puddler; that his superior, a man by the name of Weatherwax had told him, Ehmett, that, if any puddler wanted him to do anything, he must do it. Ehmctt, obtained a verdict of $4,000 in damages for his injuries. The judgment based on this verdict was re-versed because it was not shown that Weatherwax had any authority to direct Ehmett to obey the orders of the puddlers, although Weathewax was himself the superior of Ehmett and had authority to give him orders about the business he was employed to do. See, also, Louisville & Nashville Railroad Co. v. Pendleton's Adm'r, 104 S. W. 382, 31 R. 1025, 126 Ky. 605.

Applying these principles to the case at bar, it is obvious that the plaintiff failed to make out a cause of action for damages. Fisher, being himself without authority to act as hostler, could not issue orders to Pope to act as helper. If Pope chose to obey these unauthorized orders, he did so at his peril, and assumed all the risk involved in the labor which he voluntarily undertook. There is no evidence in the case that any person in authority knew that Fisher had taken possession of the engine, or that Pope had been installed as helper. Certainly a mere usurper upon the engine was not clothed with the authority of an engine hostler. If authority could be thus assumed, it is obvious that the company would be at the mercy of every wrongful intruder. Engine hostlers are supposed to be men of experience and prudence, and they are, therefore, authorized to call inexperienced men to aid them in their duties. In thus assisting the hostler the inexperienced employe is acting under the protection of his personal supervision, and would doubtless receive from his superior all the instruction

as to how to perform his duty necessary to protect him from injury. The corporation, having authorized the hostlers to call on the cinder pit men for assistance when needed, is responsible for the failure of its agent to protect by a necessary instruction the inex-- perienced employe from harm or injury; but a mere volunteer or intruder into the office of hostler does not thereby become the agent of the company so as to bind it for his negligence in the performance of his usurped duties.

In conclusion, we are of opinion that Fisher had no authority to take possession of the engine and operate it as hostler; that in doing so he was acting in direct disobedience of a rule of the company; that he had no authority to call on Pope to assist him; that, if he told Pope that Rhodes directed that this be done, he stated what was untrue, and that Pope obeyed him at his own peril. It follows from this that the court should have sustained the motion of the defendant at the close of plaintiff's testimony to give a peremptory instruction to the jury to find for it.

For this reason, the judgment is reversed for further proceedings consistent herewith.