WILLIAM J. CROSS *v.* PASSUMPSIC FIBRE LEATHER COMPANY.

Special Term at St. Johnsbury, April, 1916.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed October 10, 1916.

*Witnesses — Hostility — Harmless Error—Cross-Examination—
Master and Servant—Duty to Keep Premises Safe— Knowl-
edge of Unintended Use of Premises by Employees—Pre-
sumptions—Inferences—Duty of Master to Inspect—As-
sumption of Risk—Contributory Negligence—Instructions
to Jury—Orders Given to Servant by Co-servant—New
Trial on Question of Liability.*

While it is the general rule that a party cannot impeach his own
witness by showing that he has made previous statements at
variance with his testimony; yet if a witness is, in the opinion
of the court, adverse, such statements may, by leave of court, be
shown, under the authority of P. S. 1597.

Where the contrary does not appear, the Supreme Court will, when
necessary to support the ruling of the trial court admitting in
evidence statements of the witness inconsistent with his testi-
mony, assume that the trial court found the fact to be that the
witness was hostile.

Where nothing appeared from the transcript, which was made control-
ling, to support a ruling that the witness was adverse, it was error
to permit him to be asked, on direct examination, whether he had
not made statements to the examiner at variance with his testi-
mony; and the fact that the witness answered that if he had so
stated, he did not understand the question asked him, did not
render the error harmless.

*Held*, there was evidence tending to show that no changes had been
made in the appliance in question, since the accident.

Where a witness testified that a certain trap door, through which
plaintiff passed before the accident in question, was installed for
purposes of ventilation, it was proper to show in cross examina-
tion that the ventilation would have been better if the door had
been cut elsewhere.

In such circumstances, it was also proper to show, in cross examination, that no other rooms had such ventilating arrangements, and that, as a ventilator, the door had certain disadvantages.

Where plaintiff was injured while using a plank as a way from one room to another in defendant's factory, upon the evidence, *held*, it was for the jury to say whether or not there was an implied invitation extended to the defendant's employees.

Where a trap door was put in defendant's factory as a passage way for use by defendant's employees, or they were reasonably justified in inferring that it was for such use, the defendant was under obligation to use the vigilance of a prudent man to make and keep the passage way safe.

Upon all the evidence, *held*, that the question of the defendant's knowledge of the use of the trap door by its employees as a passage way, was for the jury.

A presumption is a deduction which the law requires the trier to make.

An inference is a deduction which the trier may or may not make according to his own conclusions.

An inference may be and often is retroactive.

Where the plaintiff was injured while using a plank, with cleats attached, as a means of passing from one room in defendant's factory to another, and there was evidence tending to show that one of the supports of the plank allowed the plank to tilt, and sway, *held*, that the question of defendant's knowledge of this condition was for the jury.

*Held*, also, that even though the plank had not exhibited this defect before the accident, the defendant was not excused from the active and continuing duty of inspection, and that it was for the jury to say whether the defendant had used sufficient care in this regard.

*Held*, also, that the plaintiff, not knowing that the plank would tilt when he stepped upon it, had a right to assume that the defendant had discharged its duty toward him by making the plank reasonably safe for him to pass over.

A servant is not precluded from recovering for injuries received in a hazardous position, voluntarily and unnecessarily taken, where it is not the normal but a new and unknown condition that proximately results in those injuries. The assumption of one risk does not necessarily amount to the assumption of another independent of it.

Where plaintiff received injuries as a result of the tilting of a plank upon which he was walking, while passing from one room to another in defendant's factory and the evidence tended to show that he let himself down upon the plank by supporting his weight upon his hands, placed on either side of a trap door, through which he lowered himself, and when his feet were upon the plank, he let his weight upon them by removing his hands from the sides of the door, *held*, the jury might reasonably infer that the plaintiff was not guilty of contributory negligence.

Where the defendant's evidence tended to show that a trap door and plank were not intended for use, as a passage way from one room in defendant's factory to another, it was error to omit to instruct the jury upon the question of defendant's knowledge of the actual use for this purpose by defendant's employees.

An exception to the terms and manner in which a question is submitted to the jury, will not be considered in Supreme Court unless the claimed fault is specifically pointed out to the trial court.

The fact that a servant is, when injured, complying with a specific order of the master or his representative, tends to negative the inference that the servant voluntarily encountered a danger which was, or ought to have been, comprehended by him.

Where the representative of the master directed a servant to use a certain trap door in passing from one room to another, this was, so far as the servant's compliance with the direction was concerned, a designation of that route as a way for his use.

In order to negative the proposition that a servant voluntarily encountered a danger which was, or ought to have been comprehended by him, while acting in compliance with an order given him by another, it must appear that the order was given by the master or one who stood in that relation to the servant, and not by a mere co-servant.

Where an employee of the defendant was injured while walking upon a plank, in passing through a drying room in the defendant's factory, in accordance with an order given him by the boss of the drying room, *held*, that the order so given did not involve a duty which the defendant owed the plaintiff by the force of their relation, and so the boss of the drying room was not, as to this order, a vice principal, but a mere fellow servant, although the superintendent of the factory had instructed the plaintiff that he was to do as the boss directed.

The selection of one or the other of two routes provided by the master for passing from one room to another in his factory, is a mere act of service, and though made by a servant of superior grade does not, even if it amounts to negligence, affect the master with liability.

As to whether a different conclusion would be reached if the servant were an inexperienced minor, is not decided.

Where a servant was injured while using a certain trap door and plank as a means of going from one room in defendant's factory to another, *held,* error to admit evidence that the servant was instructed to use the trap door for this purpose by one who, although of higher rank, was a co-servant.

Where error committed by the trial court affects the question of liability, and not the amount of damages found by the jury, the case will be sent back for a new trial on the question of liability only, with direction that if the verdict on retrial is for the plaintiff, judgment shall be rendered for the amount of damages found in the first trial with interest thereon.

CASE FOR NEGLIGENCE. Plea, the general issue. Trial by jury at the December Term, 1913, Caledonia County, *Fish,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Harry Blodgett* and *Dunnett & Shields* for the defendant.

When a servant has the choice of two routes, one dangerous and the other safe, and he voluntarily chooses the dangerous way, he is guilty of contributory negligence and the defendant is not liable. *Smoot & Sons Co., Inc.* v. *Johnson,* 76 S. E. 911; *Hamilton* v. *R. & D. R. Co.,* 9 S. E. 670; *Beck* v. *So. Ry.,* 62 S. E. 883; *Garstad* v. *Pioneer Sand & Gravel Co.,* 131 Pac. 1168; *McKean* v. *Col. Fuel & Iron Co.,* 71 Pac. 425; *Pierson* v. *Citizens Tel. & Tel. Co.,* 123 N. W. 642; *Convey* v. *Ramsey,* 176 Ill. App. 542; *Patterson* v. *Hedden & Sons Co.,* 90 N. Y. Supp. 1069; *Conners* v. *Merchants Mfg. Co.,* 184 Mass. 466, 69 N. E. 218; *Dolphin* v. *Plumley,* 167 Mass. 167.

The fact that plaintiff was instructed by his immediate foreman to use the trap door as a passage way does not render the defendant liable. The foreman was a fellow servant, for the question whether one is a vice-principal or a fellow servant does

not depend upon the grade of service, but upon the character of the work performed. *Brown* v. *Peoples Gas Light Co.*, 81 Vt. 477, 71 Atl. 204; *Doyle* v. *Melendy*, 83 Vt. 339, 75 Atl. 881; *C. N. O. & T. P. Ry. Co.* v. *Hill's Admr.*, 89 S. W. 523; *Ferren* v. *Old Colony Ry.*, 143 Mass. 197; *Mollhoff* v. *C. R. I. & P. Ry. Co.*, 82 Pac. 733; *Morrison* v. *S. P. L. A. & S. L. R. Co.*, 88 Pac. 998; *Kinney* v. *Corbin et al.*, 19 Atl. 141; *Small* v. *Allington & Curtis Mfg. Co.*, 48 Atl. 177; *Knutler* v. *N. Y. & N. J. Tel. Co.*, 52 Atl. 565; *Galvin* v. *Pierce*, 54 Atl. 1014; *Pistoner* v. *Am. Can Co.*, 119 Fed. 496; *Wellihan* v. *Nat. Wheel Co.*, 87 N. W. 75; *Reid et al.* v. *Medley's Admr.*, 87 S. E. 616; I Labatt, Master & Servant, p. 1258, §444; 26 Cyc. 1320; 12 A. & E. Ency. Law (2nd ed.) 993 and cases cited.

*Porter, Witters & Harvey* for the plaintiff.

It was the duty of the defendant to furnish the plaintiff a reasonably safe place to work and maintain it in a reasonably safe condition. *Davis* v. *C. V. Ry. Co.*, 55 Vt. 84; *Barney* v. *Quaker Oats Co.*, 85 Vt. 372; *Lassasso* v. *Jones Bros. Co.*, 88 Vt. 526.

The plaintiff was not contributorily negligent. He had the right to assume that the defendant had used due diligence to provide him a suitable place in which to work. *Dunbar* v. *C. V. Ry. Co.*, 79 Vt. 474; *Drown* v. *N. E. Tel. & Tel. Co.*, 80 Vt. 1; *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489; *Lassasso* v. *Jones Bros. Co.*, 88 Vt. 526.

The plaintiff did not assume the risk. *Dumas* v. *Stone*, 65 Vt. 443; *Dunbar* v. *C. V. Ry. Co.*, 79 Vt. 474; *Drown* v. *N. E. Tel. & Tel. Co.*, 80 Vt. 1; *McDuffee* v. *B. & M. R. R.*, 82 Vt. 416; *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489; *Lassasso* v. *Jones Bros. Co.*, 88 Vt. 526.

POWERS, J. This plaintiff sues for injuries received while at work in the defendant's leather-board mill at Passumpsic. In this mill, the defendant maintained several drying rooms in which during the winter the stock was dried out. One of these rooms was in two sections, one of which was directly over the other. This room was known as "No. 1," and the lower section was sometimes called "Lower No. 1," and the other "Upper No. 1." It was necessary for the workmen engaged in this room

to go from one section to the other with some frequency, and for this purpose an elevator was provided. This elevator was sometimes out of commission, and at such times the men could go from one section to the other by using a certain stairway and ladder, which for present purposes need not be further described.

At the time of the plaintiff's injury there had been installed and was in operation in Lower No. 1, a large, rapidly revolving fan located near the southwest corner of the room. Prior to the installation of this fan and at the time of the accident, there was a plank running in a northerly and southerly direction along and about two feet from the west wall of the room. This plank was nearly a foot wide and about ten feet long. It was so placed that the lower or southerly end was some two feet lower than the other end. It was supported on crosspieces at each end, and the lower end was fastened to the crosspiece by a spike driven through it nearly in the middle; this spike did not hold the plank firm, but allowed it to "play" as the upper end was tilted. At the upper end of the plank the crosspiece was on a slant, the easterly end of it being much lower than the other, and the plank was not fastened to it at all. The westerly edge of the plank rested on the crosspiece, but owing to the slant the easterly edge did not, and a little downward force exerted on the plank would cause the easterly edge to drop down an inch and a half, tilting it toward the revolving fan. On the upper side of the plank, crosswise cleats were nailed, to make it easier for one to walk up or down on it. Before the fan was put in the plank was in common use by the workmen as a pass-way between the two sections of this dry room,—there being an open space in the floor above its upper end through which they could pass. The fan was installed in October, 1912. At that time, the floor of Lower No. 1 was cut away to allow the ·edge of the fan to run below it, and this left the lower end of the plank inaccessible when the machinery was running. The opening in the upper floor was then boarded over, but the plank was not removed, and it could be and was used in connection with operating a steam valve near it. Later on, and before this accident, a trap door was cut in the floor between Upper and Lower No. 1, practically over the upper end of the plank.

Theodore Chase was the defendant's general manager; Charles Webster, its foreman in charge; and Leslie Thomas, boss of the dry rooms. Webster told the plaintiff to do what-

ever Thomas directed.  Prior to the accident, the plaintiff had
seen the men go up and down through the trap door, and he
had seen both Webster and Thomas do this.  He knew all about
the location of the fan, the plank and the steam pipes, but he did
not know that the plank was insecure and would tip when
stepped on, and supposed it was safe.  Webster knew that the
men passed up and down through the trap door when the
machinery was not running and that there was nothing to pre-
vent their doing so at other times; no order forbidding the use
of the plank and trap door when the machinery was running
had ever been given the men, and the defendant never inspected
the plank or its supports.  At the time of the accident, the
plaintiff was assisting Thomas, and in the course of the work
it became necessary for them to go from the upper to the lower
room.  They tried the elevator, but it was not working.  There-
upon, Thomas directed the plaintiff to go down through the trap
door.  The plaintiff obeyed this order, and let himself down on
to the plank, which tilted under his weight and threw him into
the revolving fan.  The injuries sued for resulted.  There was no
evidence that the defendant actually knew that the plank would
tip as it did, and no direct evidence to show how long it had been
in that condition.

Leslie Thomas was called as a witness by the plaintiff.  He
testified in substance that he had not seen workmen go up and
down through the trap door.  Thereupon, plaintiff's counsel
asked him if on a specified occasion he did not tell the examiner
that he had seen the men make such use of the trap door.  The
defendant objected on the ground that this would amount to an
attempt to impeach the plaintiff's own witness.  The objection
was overruled and the defendant excepted.  The witness
answered that he might have told the examiner so, but if he did,
he did not understand the question then asked him.

The general rule is, as the defendant contends, that a party
cannot impeach his own witness by showing that he has made
previous statements at variance with his testimony; but if this
witness was, in the opinion of the court, adverse, such state-
ments could, by leave of the court, be shown.    P. S. 1597.  When
the contrary does not appear, this Court will, when necessary to
support the ruling, assume that the trial court found the fact to
be that the witness was hostile.  *Jewell* v. *Hoosac Tunnel & W.
R. Co.*, 85 Vt. 64, 81 Atl. 238.  But here the contrary does ap-

pear, for the transcript is referred to and made controlling, and from that it appears that the question of the witness' hostility was not referred to, and nothing appears to support a finding that the witness was adverse. On the contrary, he appears from the transcript to have been fair and frank. Though the objection made was specific, the ruling seems to have been grounded upon the assumption that it involved only the allowance of a leading question. The plaintiff insists that the answer given shows that the error did no harm, and cites *Coolidge* v. *Ayers,* 77 Vt. 448, 61 Atl. 40. But there the answer was wholly noncommital; while here it was an indirect admission. There no inference could be drawn from it one way or the other; here, the jury was warranted in inferring from the answer that the witness did in fact make the statement inquired about.

John Perham, a graduate surveyor, was a witness for the plaintiff. He testified that he examined the premises after the accident and made measurements and plans thereof. He was asked if he then took hold of the plank or its frame work to see how solid the former was, and replied, without objection, that he did. Counsel then said: "Tell us whether or not it was solid?" The defendant objected on the ground that there was no evidence in the case "that it was in any such condition at the time of the accident." This objection was overruled and the defendant excepted. The witness answered, "It swung very easily." No objection was made to this answer, so the question for consideration relates solely to the propriety of the question.

The objection made was without foundation. The transcript shows that Theodore Chase, Wesley Converse and Charles Webster gave testimony tending to show that no changes had been made in the plank or its supports since the accident. Moreover, counsel for the defendant, in open court, while discussing a proposed jury view, had previously stated, in reply to a question from the bench, that though a guard had been put on the fan, no change had been made "that would affect this accident in any way."

Charles Webster was a witness for the defendant. He testified to the effect that the trap door was installed for the purpose of ventilating the lower room. The plaintiff's claim was that it was intended for a pass-way, and there was evidence from which this could reasonably be inferred. So, while neither side made the original purpose of cutting through this door the

only question to be determined, both regarded it as of importance in the determination of what the workmen's rights therein were.   And important it surely was, for if the plaintiff used it for just the purpose for which the master intended it, he was certainly justified—other questions aside—in such use. On the other hand, if he used it for a purpose not contemplated or intended by the master, such use would not here be justified without proof of further facts.   In cross-examination of Webster, the plaintiff was allowed to show that for ventilating purposes it would have been better if the door had been cut in another location.   This was proper cross-examination as it tended to discredit the direct testimony of the witness.

Theodore Chase also testified for the defendant that the trap door was intended for ventilating purposes, and the plaintiff was properly allowed to show by his cross-examination that none of the other dry rooms had such an arrangement, and that as a ventilator it had certain specified disadvantages.

At the close of the plaintiff's evidence the defendant moved for a directed verdict and excepted when this motion was overruled.   It then proceeded with its defence; and at the close of all the evidence renewed its motion, and excepted when the court again overruled it.   This last exception is for consideration.

The defendant insists that the plank and trap door together were never intended as a way of passage for the workmen, and that this is so plain from the record that there was nothing on that question to go to the jury.   Before the fan was put in, as we have already seen, it was intended for such use of the workmen as is sufficiently shown by its construction and the testimony.   When the fan was put in, it is equally clear, such use and purpose was abandoned.   The defendant insists with much vigor that the uncontradicted evidence shows that the trap door was made for ventilating purposes, only.   We cannot agree to this.   The fact that the plank was left there, and that no slats or screen were put over the opening, together with the evidence brought out in the cross-examination of the witnesses above referred to, made this a jury question.   But whatever its original purpose may have been, when it was installed, it restored the opportunity to pass back and forth through it as had previously been done. It is true that the lower end could not be conveniently used, but another place to get on and off the plank was available,

as is sufficiently shown by the fact that the men did so use it. The facts already referred to, in the absence of express notice or anything else to indicate the contrary warranted an inference on the part of the men that they were expected to resume use of the plank as a way from one room to the other. It was, then, for the jury to say whether or not an implied invitation was extended to them to so use it. If the trap door was actually put in for such use by the workmen, or they were reasonably justified in so inferring, a master's obligation to use the vigilance of a prudent man to make and keep the route safe attached.

There is for consideration, too, the further question whether such use of this plank and trap door was with the actual or implied knowledge of the defendant. We cannot agree with counsel who argue that such use was wholly unknown to this master. The record does not show that any of the officers or managers of the defendant had actual knowledge of it, but its foreman, Charles Webster, who it must be conceded represented the company, knew about it, for he used it himself, at times. To be sure he testified that he went down through there on Sundays and when they were making repairs, and that he never, before the accident, used the trap door when the machinery was running. But on the occasions named, others used this way as he did, and this he knew for he testified that, when the mill was not running, the plank was in general use for passing from one room to the other, and that this continued down to the time of the accident. Certainly it cannot be said as matter of law that he was justified in assuming that it would not be so used when the machinery was running. On the contrary, it was a fair inference from all the facts that as a reasonable and prudent man he ought to have anticipated its use at such times.

Webster testified that the fan was installed in the fall of 1912,—in October, he thought. The accident occurred on Thanksgiving Day of that year. It thus appears that the interval of time involved in our inquiry is something less than two months. During this time, Leslie Thomas used the trap door to go from one room to the other from 16 to 20 times; Percy Wells, 5 or 6 times; and Charles Webster, 16 to 20 times. Taking the view of this evidence most favorable to the plaintiff, as we must, it shows that the use of this way by the workmen averaged about twice in three days. It is to be borne in mind that the elevator was commonly used, and it was only when the elevator was out

of commission that there would be any occasion to seek another way. The defendant argues that the evidence just alluded to, or some of it, does not specifically refer to the time since the trap door was made. But the course of the trial was such that the jury was warranted in understanding that it did so refer, and the argument is here without force.

Upon all the evidence, the question of the defendant's knowledge was for the jury. With the defendant's knowledge established, it owed the plaintiff the duty of active care, and we reach the question whether on the evidence, it failed in the discharge of that duty.

That a dangerous condition existed is beyond question; but we agree with the defendant that it does not necessarily follow that it existed through the actionable fault of the defendant. There was no direct evidence as to how long this defective condition had existed, and the defendant insists that a master is not chargeable with negligence unless it is shown that the defect has existed a sufficient time to charge him with knowledge of it; and the defendant quotes from the opinion in *Martyn* v. *Curtis*, 67 Vt. 263, 31 Atl. 296, the statement taken from Lawson on Presumptive Evidence, that ''a presumption is not retroactive,''—the force of the argument being that the fact that the plank was unstable at the time of the accident did not warrant a presumption that it was so before. With this proposition we quite agree. But we must be cautious in our use of language. A presumption and an inference are not the same thing. A ''presumption'' is a deduction which the law requires a trier to make; an ''inference'' is a deduction which the trier may or may not make according to his own conclusions. A presumption is mandatory; an inference, permissible. 1 Jones Ev., §9, a (8); *Cogdell* v. *Wilmington & W. R. Co.*, 132 N. C. 852, 44 S. E. 618. An inference may be and often is retroactive; that is to say, a trier may from present conditions infer a previous fact. The well-remembered illustration used by Judge Thompson in the trial of *State* v. *O'Grady*, 65 Vt. 66, 25 Atl. 905, furnishes one example of such an inference, and the case itself, another.

There was evidence tending to show that the defect in this passageway was structural,—that it was never sufficiently stable to be safe, at least not since the fan was installed; that the supporting standard on the east side of the upper end of the plank

was much too low and was unbraced, thereby allowing the plank to tilt and the whole structure to sway. This is one view the jury was justified in taking, and this view would establish the defendant's negligence without question.

But assuming that everything was originally safe, there was sufficient evidence to carry the case to the jury on the theory that the structure had become unsafe by use and that the defendant knew or ought to have known of its defects. It will be remembered that the lower end of the plank was spiked to the crosspiece on which it rested. This would mean that originally the plank was tight on the nail; but at the time of the accident the lower end of the plank was loose on this nail, and would "play" on it when the upper end was tilted. One is almost forced to the conclusion that this "play" was due to the strain and wear caused by the tilting of the plank. It would take some time to bring about the condition shown by the evidence, and this fact alone would reasonably indicate that the plank had been tilting for a time so long that the defendant ought to have known about it and fixed it. This is nothing more than an application of the doctrine of *Marshall* v. *Dalton Paper Mills,* 82 Vt. 489, 74 Atl. 108, 24 L. R. A. (N. S.) 128; wherein the quantity of grease found on the running-board of the paper machine, was taken as evidence of the length of time it had been accumulating thereon. The fact that the plank had not before exhibited this defect, as the defendant's evidence tended to show, did not excuse the defendant from the active and continuing duty of inspection. *Houston* v. *Brush & Curtis,* 66 Vt. 331, 29 Atl. 380. On all the evidence it was for the jury to say whether the defendant had used sufficient care to meet the requirements of this feature of the case. *Id; Vaillancourt* v. *Grand Trunk Ry. Co.,* 82 Vt. 416, 74 Atl. 99; *Marshall* v. *Dalton Paper Mills, supra.*

Did the plaintiff assume the risk? He knew all about the fan, the steam pipes, the darkness below the plank. He knew how these physical facts affected his safety if he went down over the plank. But the one particular thing that caused this accident, he did not know. He did not know that the plank would tip when he stepped down upon it. It is idle to talk about the known dangers of this place; these did not cause this plaintiff to fall. He had a right to assume, without inspection, that the defendant had discharged its duty toward him by making the

plank reasonably safe for him to pass over.   He knew of another way provided by his master, safe and convenient.   But under the evidence he had a right to use this one and to assume that it too was safe so far as the stability of the plank was concerned.

Nor is he precluded by the doctrine of voluntary choice between two ways, one safe and the other unsafe.   If he had been injured by the perils inhering in this situation of which he knew or ought to have known, the argument of the defendant would be in point.   But when this plaintiff made his choice, assuming that it was voluntary in a legal sense, though he may have assumed all the others, he did not assume the risk incident to the instability of the plank, for he knew nothing of it.   A servant is not precluded from recovering for injuries received in a hazardous position, voluntarily and unnecessarily taken, when it is not the normal but a new and unknown condition that proximately results in those injuries.   *Kiley* v. *Rutland R. Co.*, 80 Vt. 536, 68 Atl. 713, 13 Ann. Cas. 269.   The assumption of one risk does not necessarily amount to the assumption of another independent of it.   *Missouri Pac. R. Co.* v. *Somers,* 78 Tex. 442, 14 S. W. 779.

So far as the subject of contributory negligence in meeting the known dangers is involved it is enough to say that the evidence tended to show that he let himself down onto the plank by supporting his weight upon his hands placed upon the floor on either side of the opening, and when his feet rested upon the plank he let his weight onto them by removing his hands from the floor,—from which an inference of due care could reasonably be drawn.

As we have seen, the defendant's evidence tended to show that the plank and trap door were not intended or furnished as a passageway, but that the latter was merely a ventilator, and the former, if intended for use at all, was only for the use of the men engaged in repairs in that corner of the room.   If the jury was to accept this claim of the defendant, then the further question as to the defendant's knowledge of its unintended use as a passageway would stand for consideration before liability could be fixed upon the defendant.   No allusion to this feature of the case was made in the charge, and the defendant seasonably excepted to its omission,—specifically pointing it out.   The defendant was entitled to a charge covering this point and its omission was error.

The defendant also excepted to the charge for that it failed to submit to the jury the question of the plaintiff's contributory negligence. But the court did submit that question, and if in the terms or manner of its submission the defendant saw fault, it should have specifically pointed it out.

Thus far we have taken no notice of the evidence, either as to its admissibility or effect, tending to show that Leslie Thomas ordered the plaintiff to go down by the trap door route. When the evidence came in it was limited in its effect to showing that the plaintiff was then in the line of duty. That going from one room to the other as occasion required was within the scope of his employment is perfectly obvious from the record. But whether obeying this order to take a particular route affected this question depends upon the relation in which Thomas stood to the defendant in giving the order. It should be kept in mind that we are now considering only the order given and obeyed in its effect upon the plaintiff's situation. We have already seen that liability might here exist, irrespective of the order, according to how the facts referred to were found by the jury.

The importance of the fact that a servant is, when injured, complying with a specific order of the master or his representative, is well recognized. It ordinarily lies, so far as need here be stated, in the fact that it tends to negative the inference that the servant *voluntarily* encountered a danger which was, or ought to have been comprehended by him. 1 Labatt, on Master and Servant, §433. It has a further significance in this case. If the defendant's representative directed the plaintiff to take the trap door route, it was, so far as the plaintiff's compliance with that direction is concerned, a designation of that route as a way for his use. But what we have just said presupposes that the order was given by the master's representative. Before a servant can claim any advantage from the doctrine referred to, he must among other things, show that the order was given by the master or one who stands in that relation to him. An order given by a mere co-servant affords him no protection. *American Bridge Co.* v. *Bialk,* 129 Ill. App. 202; *Moody* v. *Hamilton Mfg. Co.,* 159 Mass. 70, 34 N. E. 185, 38 Am. St. Rep. 396; and cases hereinafter referred to.

Did Thomas, in a legal sense, represent the defendant in the very act of giving this order? The answer to this question depends wholly upon what the order involved, and not at all upon

Thomas' superior rank.   *Davis* v. *Central Vt. R. Co.*, 55 Vt. 84, 45 Am. Rep. 590; *Hayes* v. *Colchester Mills*, 69 Vt. 1, 37 Atl. 269, 60 Am. St. Rep. 915; *Brown* v. *People's Gas Light Co.*, 81 Vt. 477, 71 Atl. 204, 22 L. R. A. (N. S.) 738; *Doyle* v. *Melendy*, 83 Vt. 339, 75 Atl. 881; *Griffin* v. *Boston & Maine Railroad*, 87 Vt. 278, 89 Atl. 220.   If the order involved a duty which the defendant owed the plaintiff by force of their relations, Thomas was a vice-principal; if the order did not involve such a duty, he was a mere co-servant.   It seems plain enough to us that the defendant did not owe the plaintiff the duty of selecting any particular route for his use in passing from one room to the other.   It did owe him a duty in regard to each and all of the routes provided by it, but the choice of one or the other was for the servant, alone.   Nor was Thomas authorized to furnish or designate a route not so provided.   The selection of one or the other of two routes provided by a master, like the selection of the particular materials for a staging, *Garrow* v. *Miller*, 72 Vt. 284, 47 Atl. 1087; the selection of an improper tool from proper ones supplied, *Maher* v. *Throop*, 59 N. J. Law 186, 35 Atl. 1057; the omission to use materials furnished for shoring trenches, *Brown* v. *People's Gas Light Co.*, *supra;* the choice of methods for carrying on the work; 4 Labatt, Master and Servant, §1527; or the failure to turn on the electric lights, *Zilver* v. *Robert Graves Co.*, 106 App. Div. 582, 94 N. Y. Supp. 714, is a mere act of service, and though made by a servant of superior grade does not, even if it amounts to negligence, affect the master with liability.   It is one of the executive details of the work, which the master may delegate to a competent person.

In *Felch* v. *Allen*, 98 Mass. 572, the plaintiff and one Hussey were fellow-workmen in the defendant's chain factory.   They were set to work at moving certain stock from the basement to the attic of the building.   During the progress of the work Hussey proposed that they use the elevator and that the plaintiff go upon it to steady some plank they were sending up.   The plaintiff complied with this suggestion and was injured by the insufficiency of the elevator.   It was held that he could not recover damages from the defendant on account of these injuries, —the ground of the decision being that the master did not provide this elevator for the plaintiff's use, and that Hussey had no authority to order its use by the plaintiff.

In *Healey* v. *Blake Mfg. Co.*, 180 Mass. 270, 62 N. E. 270,

the plaintiff was injured by the fall of a sled which was being hoisted by a derrick while he was sitting on it to balance it by order of the defendant's superintendent. It was held that the latter was a fellow-servant and that there could be no recovery at common law.

In *Ahern* v. *Hildreth,* 183 Mass. 296, 67 N. E. 328, the plaintiff, a chambermaid, was injured by falling through a glass floor over a light shaft in a hotel, when ordered by the defendant's housekeeper to go across it to get a plant. It was held that the order was given by a fellow servant and there could be no recovery.

In *Zilver* v. *Robert Graves Co.,* 106 App. Div. 582, 94 N. Y. Sup. 714, the fact that lights were turned out by order of a fellow servant did not affect the plaintiff's situation.

The fact that Webster told the plaintiff that he was to do anything Thomas directed him to do, does not change Thomas' status. *Dill* v. *Marmon,* 164 Ind. 507, 79 N. E. 67, 69 L. R. A. 163; and *Mitchell-Tranter Co.* v. *Ehmett,* 65 S. W. 835, 23 Ky. Law Rep. 1788, 55 L. R. A. 710, were cases containing this element. This statement by Webster obviously related to what the plaintiff should do, and not how he should do it.

The doctrine under discussion is closely related to that which obtains where a servant is called upon to do work outside the scope of his employment. In such cases, an unauthorized order affords no protection. *Parent* v. *Nashua Mfg. Co.,* 70 N. H. 199, 47 Atl. 261; *Martin* v. *Highland Park Mfg. Co.,* 128 N. C. 264, 38 S. E. 876, 83 Am. St. Rep. 671; *Shirley* v. *Abbeville Furniture Co.,* 76 S. C. 452, 57 S. E. 178, 121 Am. St. Rep. 952; *Mitchell-Tranter Co.* v. *Ehmett,* 23 Ky. Law Rep. 1788, 65 S. W. 835, 55 L. R. A. 710; *Southern Ry. Co.* v. *Pope's Admr.,* 133 Ky. 835, 119 S. W. 237, 19 Ann. Cas. 376.

What effect it would have upon this question if the plaintiff was an inexperienced minor, we need not now inquire.

The facts material to Thomas' status being undisputed, there was nothing to go to the jury on that question, and the court below should have so ruled.

From the foregoing, it follows that the fact that Thomas gave the order to the plaintiff, the fact that he intended to go down through the trap door, and the fact that he intended that the plaintiff should do so, were immaterial and should have been excluded, and the jury should have been instructed accordingly.

Several other exceptions were saved below, but they are not covered herein, because some of them are too unimportant to require treatment and others are of such a character that it is improbable that the questions involved will arise on the retrial.

None of the errors pointed out affect the amount of the recovery and therefore the case will be sent back for a new trial on the question of liability only.

*Judgment reversed and cause remanded for retrial on the question of liability, only; if the verdict therein is for the plaintiff, let judgment be rendered for the amount of damages found by the first jury, with interest thereon.*